BAKER v. H. DITTLINGER ROLLER MILLS CO. (No. 6027.)

(Court of Civil Appeals of Texas. San Antonio. May 1, 1918. Rehearing Denied May 29, 1918.)

1. CARRIERS ⊚⇒107 — LOSS OF GOODS — LIABILITY.
If a carrier receives the quantity of wheat stated in the bill of lading, and delivers a less quantity, it is liable for the difference.

2. CARRIERS ⊚⇒52(2)—LOSS OF GOODS—BILL OF LADING—QUANTITY OF GOODS.
Mere fact that weighing of wheat was done by a third person did not relieve carrier of liability when it delivered less quantity, where it accepted such weight and entered it on the bill of lading.

3. CARRIERS ⊚⇒132—LOSS OF GOODS—LIABILITY—BURDEN OF PROOF.
Weights of goods shipped stated in the bill of lading being prima facie evidence of the amount received, the burden is on the carrier to show that it did not receive such amounts.

4. CARRIERS ⊚⇒52(2)—LOSS OF GOODS—LIABILITY—BURDEN OF PROOF.
Where carrier proves that it delivered all the wheat received, which was carefully weighed and checked at destination, when it was found to weigh less than the bill of lading states, the carrier is not liable for the discrepancy.

5. CARRIERS ⊚⇒134—LOSS OF GOODS—LIABILITY—EVIDENCE—SUFFICIENCY.
Evidence held insufficient to show that there was no leakage in a car carrying wheat, so that the carrier was not absolved from liability for the discrepancy.

Appeal from District Court, Comal County; Frank S. Roberts, Judge.

Action by the H. Dittlinger Roller Mills Company against Jas. A. Baker, as receiver of the International & Great Northern Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Fisher & Fisher and Robert Thompson, all of Austin, and Wilson, Dabney & King, of Houston, for appellant. Henne & Fuchs, of New Braunfels, for appellee.

MOURSUND, J. Appellee sued appellant in justice's court for $112.35, including $10 attorney's fee, and interest, because of the alleged negligent loss during transportation from Ft. Worth, Tex., to New Braunfels, Tex., of 89 bushels of wheat shipped in bulk. A judgment was rendered for the amount sued for, and upon appeal to the district court, the same judgment was rendered.

The wheat was shipped by the E. G. Rall Grain Company in car No. 24280, S. P., to its own order, with instructions to notify appellee of its arrival. The bill of lading recited that the weight of the wheat was 59,480 pounds, but contained a provision that the same was subject to correction as to rate, weight, and classification, and in the column wherein the number of pounds was stated there appeared under the word "Weight" the words, "Subject to Correction." The weight inserted in the bill of lading was obtained from the scale ticket prepared by an employé of the shipper, R. M. Wilhoite, who weighed the wheat at the shipper's elevator scales at the time it was loaded. This employé was licensed to serve as a weighmaster by the Western Weighing & Inspection Bureau, an organization maintained by the carriers, including the International & Great Northern Railway Company, to supervise various incidental features directly connected with the shipment of merchandise, such as checking invoices, scale tickets, and other records in an effort to verify them and insure their correctness. There was testimony to the effect that scales authorized to be used in behalf of the Western Weighing & Inspection Bureau are tested and inspected, and that only competent persons are permitted to act as the representatives of said bureau in weighing and issuing certificates.

The superintendent of the Goodwin Coopering & Inspection Bureau testified from records that the car in question was inspected and coopered and otherwise prepared for grain loading on July 19, 1915. After loading the side doors of the car were sealed by Wilhoite, under which seals the car reached New Braunfels, and was delivered to appellee's elevator for unloading. The chief joint car inspector for the Joint Car Association of railroads entering Ft. Worth testified from records that the car was inspected when received from the shippers' elevator and no evidence of any leak discovered. Currie, inspector for appellant at Mart, and Rush, inspector for appellant at Taylor, testified from their records that the car was inspected when it reached the places mentioned, and there was no leak, and no repairs made. They testified that cars, such as the one used, sometimes have a leakage which is not discernible while the car is standing still or moving slowly, but which permits the escape of wheat when the car is moving fast over rough road. It was agreed:

"That defendant's physical and mechanical inspection of the car at New Braunfels before delivery thereof to plaintiff did not disclose any signs or indication of the existence of a leakage

of its contents; that, when said car was opened after delivery at plaintiff's elevator in New Braunfels, there was no physical indication of any leakage of the wheat from the car, and after the unloading was completed plaintiff's employés went inside of the car and looked over same, but failed to observe any holes or defects therein whereby a leakage might have taken place; but plaintiff's employés were not aware at the time of the discrepancy in weight, and did not make a minute examination of the car."

When the car reached New Braunfels it was weighed on the railroad track scales, and the weight of the wheat contained therein was found to be 53,900 pounds. When it was unloaded it was weighed on appellee's elevator scales, the same showing the weight to be 54,140 pounds. No question is raised with respect to proof of the value of wheat, so the testimony relating thereto need not be stated.

[1-5] If the appellant received the quantity of wheat stated in the bill of lading and delivered only a part thereof, it would of course be liable for such portion as it failed to deliver. The fact that the weight given by the Western Weighing & Inspection Bureau was adopted by the railroad company in issuing its bill of lading places the company in no better or worse attitude than if it had done the weighing itself. The company is bound by its recital of weight, unless it shows that there was a mistake. The weights stated in the bill of lading are prima facie evidence of the amount received, and the burden is on the carrier to show that it did not receive the amount of grain mentioned in the bill of lading. This burden can only be discharged by showing that a mistake was made in weighing the wheat, or in making out the certificate upon which it issues its bill of lading. The testimony in so far as it relates directly to these two transactions fails to show any mistake. In fact all of its tends to show there was no mistake. However, if the carrier can show that it delivered all of the wheat received, and that at the destination it was carefully and correctly weighed, and there was found to be a discrepancy of 89 bushels, it has discharged the burden resting upon it, for it would follow that it could not have received the quantity stated in its bill of lading. The difficulty of making this showing is dependent largely upon the kind of goods transported. When wheat is shipped in bulk the only test is the weight. It therefore becomes necessary for the carrier to show that no wheat was taken out of the car while in its possession, and that none could leak out. The testimony in this case, introduced on behalf of appellant, even if credited by the court, fails to preclude the idea that a leak may have occurred followed by repairs made by appellant's employés. Proof that at two places en route no leak was perceived, and none perceived at destination, while persuasive, is by no means conclusive. The evidence is not so satisfactory and con-

clusive as to preclude a theory that wheat may have been stolen from the car by an employé of the carrier or some one else. The court was justified in finding that appellant did not discharge the burden resting upon him of showing that the company did not receive the quantity stated in its bill of lading. In fact we do not see how the court could have found otherwise.

We deem it unnecessary to review the cases discussed in appellant's argument. They are fact cases, and the proof showed that other tests of indentity of goods shipped existed than mere weight or that transportation was by boat or ship, thus affording a much better opportunity for proof that no loss en route could have occurred than is the case when shipments are transported by rail. Carriers can protect themselves against mistakes in bills of lading as to weight by exercising diligence before issuing the same. The owner of wheat shipped is in a bad predicament if the weight adopted by the carrier can be changed on such inconclusive evidence as was adduced in this case.

The judgment is affirmed.