## WESTERN WEIGHING & INSPECTION BUREAU et al. v. ARMSTRONG.* (No. 8683.)

(Court of Civil Appeals of Texas. Galveston. Nov. 25, 1925. Rehearing Denied Jan. 14, 1926. Dissenting Opinion Feb. 2, 1926.)

1. **Abatement and revival ⬥81—Plea in abatement filed after answer to merits, and not brought to attention of trial court for six or seven years after suit was filed, held not timely.**

Right of one of several joint owners of cause of action to maintain suit can be questioned only by timely plea in abatement, and therefore plea filed after answer to merits, and not brought to attention of trial court for six or seven years after suit was filed, was properly overruled.

2. **Partnership ⬥296(1)—Member of partnership appointed as liquidating agent, with power to collect all assets, including choses in action, held authorized to bring suit in behalf of firm.**

Member of partnership appointed as liquidating agent of firm by instrument in writing, with full power and authority to collect all as-sets, claims, and choses in action, held authorized to prosecute suit for damages from fraud in transaction with firm, without more express authority.

3. **Abatement and revival ⬥86.**

Plea in abatement for failure to join necessary party, filed after trial had begun, and not called to attention of court, is waived, in view of Complete Tex. St. 1920, or Vernon's Ann. Civ. St. Supp. 1918, art. 1902.

4. **Bankruptcy ⬥299.**

Trustee in bankruptcy of member of partnership, which had theretofore gone into liquidation, held not necessary or proper party to suit by that member as agent to enforce claim of damage for fraud in partnership transaction, in view of Bankruptcy Act, § 5, par. h (U. S. Comp. St. § 9589).

5. **Trial ⬥350(3)—In action for fraudulent inflation of weights of hay, submission of issues on proposition that, if buyer knew, or could have known by ordinary care, of inflation, seller would not be liable, held properly refused as not applicable.**

In action for damages against seller and railroad company for inflation of weights of hay purchased under contract to accept weights as certified by agent of railroad company, submission of issues, based on premise that defendants would not be liable, if plaintiff knew or could have known by exercise of ordinary care that weights had been inflated, held properly refused; there being no obligation to suspect agent of railroad company was certifying inflated weights, and such negligence not having been pleaded.

6. **Appeal and error ⬥719(7)—Whether special charges, properly refused, were sufficient to require correct submission of charge, will not be considered on appeal, in absence of assignment of error.**

Whether special charges, properly refused as erroneous, were sufficient to call attention of court to matters sought to be submitted, so as to require correct charge to be given, will not be considered on appeal, in absence of assignment of error to that effect.

7. **Trial ⬥350(2).**

Special charges relating purely to evidentiary matters instead of ultimate issues are properly refused.

8. **Appeal and error ⬥204(1).**

Objections to admissibility of evidence, not urged below, will not be considered on appeal.

9. **Appeal and error ⬥1050(2)—Admission of evidence of agent of one of parties of alleged transaction to defraud, even if erroneous as to other party, held not prejudicial, where liability did not depend on proof of conspiracy alleged.**

In action against seller of hay and railroad for damages from fraud in inflation of weights by agent of railroad, which weights buyer had agreed to accept, admission of evidence of seller's agent as to inflating weights shown on waybills in accordance with weights as inflated by railroad's agent held not preju-

dicial, if erroneous, in view of evidence proving inflation by railroad's weigher.

**10. Principal and agent ⬅⟿158—Principal is liable for fraud of agent acting within scope of authority in effecting transaction for principal.**

Principal is liable for fraud of agent acting within scope of authority in effecting transaction for principal, notwithstanding latter has no actual knowledge of fraud.

**11. Appeal and error ⬅⟿216(1)—Testimony admissible against one of joint defendants is not ground for reversal as to other, in absence of request that court limit testimony.**

Admission of testimony proper as to one of joint defendants *held* not ground for reversal as to other, in absence of request and refusal of court to properly limit such testimony.

**12. Railroads ⬅⟿17.**

Evidence of buyer, complaining of fraudulent inflation of weight of hay, *held* to show weigher of weighing bureau, a corporation, was railroad's agent.

**13. Fraud ⬅⟿52—Contracts stipulating weights of railroad's weighing bureau should control held admissible in buyer's action against seller and railroad for fraud in inflation of weights.**

In action, by buyer of hay against seller and railroad, for fraud in inflation of weights by agent of Western Weighing & Inspection Bureau, which was railroad's agent, contracts between seller and buyer and French government, to whom buyer was to sell, wherein it was stipulated that weights of Western Weighing & Inspection Bureau should control, *held* properly admitted.

**14. Appeal and error ⬅⟿1053(2).**

Admission of testimony, if error, was not reversible, in view of evidence clearly proving appellee's cause of action and instruction of court to jury to disregard such testimony.

**15. Fraud ⬅⟿58(1).**

Evidence *held* to show railroad's weighing agent, acting within scope of authority, knowingly and falsely inflated weights of hay purchased by plaintiff.

**16. Railroads ⬅⟿17.**

Railroad *held* liable to buyer for fraud of its weighing agent in inflating weights of hay while acting within scope of authority.

Pleasants, C. J., dissenting on motion for rehearing.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Suit by George W. Armstrong, trustee, against the Western Weighing & Inspection Bureau and others. Judgment for plaintiff, and defendant named and another appeal. Affirmed.

Baker, Botts, Parker & Garwood and Garrison & Watson, all of Houston, for appellants.

Woods, King & John, of Houston, and Carden, Starling, Carden & Hemphill and Wallace & Taylor, all of Dallas, for appellee.

LANE, J. On the 29th day of May, 1917, plaintiff, George W. Armstrong, filed his original petition in the district court of Harris county, Tex., seeking to recover damages against W. L. Edmundson, Liverpool Hay & Grain Company, Wilbur Webb, Galveston, Harrisburg & San Antonio Railway Company, and the Western Weighing & Inspection Bureau. The suit was filed in the name of George W. Armstrong, suing for himself individually and as the agent and trustee of and for the use and benefit of E. D. Steger, George A. Carden and C. E. Schaff, composing the partnership of Steger & Co.

Plaintiff alleged that Steger & Co. was a partnership, composed of E. D. Steger, George A. Carden, C. E. Schaff, and George W. Armstrong, doing business under said firm name, and that on or about the —— day of May, 1916, said firm and copartnership was, by mutual agreement, dissolved and terminated, and the plaintiff, George W. Armstrong, was agreed upon and appointed by all of the members of said copartnership as the liquidating agent for said firm and copartnership, and given full power and authority to collect and receive all assets, including claims and choses of action, owned and held by said copartnership; and said plaintiff brings this suit for and on behalf of said copartnership and its individual members, as trustee, for the use and benefit thereof, and as liquidating agent under said agreement and authority.

The plaintiff further alleged that on or about the 18th day of May, 1925, by written contract of that date, the firm of Steger & Co. contracted with the defendants Edmundson and Liverpool Hay & Grain Company to sell and deliver to Steger & Co. at Galveston, Tex., 5,000 tons of hay then owned by defendant Wilbur Webb, for which Steger & Co. agreed to pay at the rate of $9.50 per ton f. o. b. Galveston; that in and by such contract it was agreed that payment for the hay should be made in cash on Western Weighing Association railroad weights immediately after the acceptance of the hay, as to quality, by the inspector of the French government; that it was also provided that the sellers should compress the hay for Steger & Co. and should receive for such compressing the sum of $3 per ton; that by said contract it was specially provided that the basis of settlement as to weight should be those furnished by the Western Weighing Association, upon which the railroad companies had collected their freight charges; that, acting under said contract, Steger & Co. purchased the 5,000 tons Webb hay mentioned in the contract and also purchased additional tons of Webb hay, aggregating in all about 10,000 tons,

which it was agreed between Steger & Co. and said sellers should be purchased and paid paid for under the terms and provisions of the contract; that all of the hay was compressed by the sellers under the terms of the contract; that subsequent to the date of said written contract above referred to, it was mutually agreed by and between said Steger & Co. and said Edmundson, and said Liverpool Hay & Grain Company, and said Wilbur Webb, that said Steger & Co. should pay to the railroad company, at Galveston, the freight upon all shipments of said Webb hay made to and received by said Steger & Co., and that said Steger & Co., after deducting the amount of freight charges so paid, should pay direct to said Webb the balance of the purchase price as provided in said contract, due upon all of said Webb hay, and said Webb was constituted and acted as the agent of said Edmundson and Liverpool Hay & Grain Company in delivering and collecting for said hay; that among the number of cars of hay shipped and delivered to Steger & Co. by said Edmundson and Liverpool Hay & Grain Company, acting through and by Wilbur Webb, and received by said Steger & Co., under said contract, were 436 carloads, the identity and exact weights of which are unknown to plaintiffs, but are known to defendants, all of which were transported into the city of Galveston by the defendant Galveston, Harrisburg & San Antonio Railway Company, and which were shown by the railroad waybills, and by the certificates of weight issued by the Western Weighing & Inspection Bureau, and by the expense bills issued and presented by said defendant railroad, to contain 12,020,000 pounds of hay, and said Steger & Co. paid to said defendant railroad the freight upon said shipments, based upon said weights, and also paid to said Wilbur Webb the sum of $9.50 per ton for said hay, less the freight on said hay which had theretofore been paid to the said railway company, said freight and said payments to Wilbur Webb having been made under and by virtue of the terms of the written contract first above mentioned, and the subsequent agreement between said parties heretofore alleged; that Wilbur Webb, with intent to defraud said Steger & Co., and acting in fraudulent collusion with other persons to plaintiff unknown, greatly inflated, or caused to be inflated, the weights of said carload shipments of hay above referred to, and fraudulently, willfully, and maliciously waybilled said hay, or caused the same to be waybilled at weights greatly in excess of the actual weight of the hay contained in said shipments; that the actual weight of the hay contained in said 436 carloads of hay was only 9,850,000 pounds; that by reason of the fraudulent inflation of said weights of said 436 carloads of hay by said Webb and those acting in collusion with him, under and by said procurement, the ac-

tual weight of said hay was inflated and raised to the extent of 2,170,000 pounds over and above the actual weight of said 436 carloads of hay shipped to and received by said Steger & Co. under said contract and agreement.

It was then alleged, substantially, that the Western Weighing & Inspection Bureau is simply an organization formed and maintained by the various railroads of the United States for the purpose of weighing shipments made or passing over the lines of railroads who are parties to the agreement, for the use, benefit, and convenience of said railroads and each of them; that it has no capital stock, and does not earn nor was it intended to earn any profits; that the persons who do the weighing, which is ostensibly done by said bureau, and who keep the records of said bureau, are in fact employés of the railroads or some one of them who are parties to such agreement, and that their salaries are paid by such railroad of which such persons are employés; that whatever amount is paid by the respective railroads to said bureau, for weighing and other services in connection therewith, is used to defray the expenses of maintaining and operating said bureau, and any deficit remaining unpaid of said expenses are assessed ratably against the railroads who are parties to such arrangements, and the agents and employés of said bureau thereby become and are the agents and employés of the railroads, parties thereto; that all of said 436 carloads of hay above referred to were weighed upon their arrival in Galveston by said Western Weighing & Inspection Bureau, and its ostensible and purported employés, or under its and their direction, supervision, and with their consent and co-operation, and the persons weighing such hay or charged with the duty of weighing the same, agents and employés of the defendant Galveston, Harrisburg & San Antonio Railway Company, inflated the weights of said carload shipments as above set out as the true weights of said hay; and said railway company, acting through its agents and employés, and said Webb, acting in person and through his agents, employés, and coconspirators, fraudulently represented to said Steger & Co. that the aforesaid inflated weights were the true and correct weights of said hay; that such persons who weighed said hay in Galveston for and on behalf of said Western Weighing & Inspection Bureau, or who directed and supervised the weighing thereof, and whose names are to the plaintiff unknown, but who are well known to said railroad defendant, were, in truth and in fact, the agents and employés of the defendant railroad, and were upon the pay roll of said railway company, as its regular employés; and they had been delegated and authorized by said defendant railroad to weigh such shipments as might be

and were transported into the city of Galveston over the line of said defendant, including the 436 carloads above referred to, and to make certificates and report to other agents and employés of said defendant of the weights of such shipments; that such agents and employés of the defendant railway company who weighed or supervised and directed the weighing of said hay and certified and reported to other agents and employés of said defendant the purported weights thereof, in inflating the weights of said hay as aforesaid, acted fraudulently, willfully, and maliciously, and in fraudulent collusion and conspiracy with the defendant Webb and other persons to plaintiff unknown, who were fraudulently colluding and conspiring with him to defraud said Steger & Co., as above set out; and thereby, said defendant Galveston, Harrisburg, & San Antonio Railway Company, acting by and through its agents, representatives, and employés, who fraudulently inflated the weights of said hay, as aforesaid, and its other agents and employés, who issued expense bills showing such weights, and collected from said Steger & Co. the freight for said shipments based upon said weights, thereby representing to said Steger & Co. that such weights were the true weights of said shipments, committed a fraud upon said Steger & Co., greatly to its damage, as herein set out; that Steger & Co., relying upon the correctness of the weights shown in the expense bills which were presented to it by said defendant railroad and which represented the weights of said carloads, as certified by said Western Weighing & Inspection Bureau, and which were claimed by said defendants to represent the true weight of said shipments, and acting in full reliance thereon, and without any knowledge or reason to suspect to the contrary, paid to said railroad company, for the account of the defendants Webb, Edmundson and Liverpool Hay & Grain Company, the amount of freight charges demanded by said railroad company on said shipments, based upon said weights, and thereafter paid to said Webb, for said hay, at the rate of $9.50 per ton, based upon said weights shown in said expense bills, to the damage of said Steger & Co. as herein alleged; that while it was provided in said written contract, as herein referred to, that said hay should be paid for upon the Western Weighing & Inspection Bureau weights, by which was meant Western Weighing & Inspection Bureau railroad weights, and upon which the railroad companies should collect their freight charges, this plaintiff says that it was implied and understood that said Western Weighing & Inspection Bureau weights should correctly represent the actual weights of said shipments, and at least that the same should have been made in good faith by said bureau and its employés; and plaintiff says that by reason of the willful fraud and deception and

bad faith of the defendant Webb, and the employés of said bureau, and of said defendant railway company, said Steger & Co. is not bound and concluded by the weights as represented and certified, as herein alleged; that said Steger & Co. had the defendants Edmundson and Liverpool Hay & Grain Company compress the hay contained in said 436 carloads, and paid them therefor the sum of $3 per ton, based upon the weights of said hay as represented by said Western Weighing & Inspection Bureau, and said defendant railroad, and their employés, as aforesaid, and thereby, and as the result of the fraud and collusion of the defendants as aforesaid, paid to said Edmundson and said Liverpool Hay & Grain Company the sum of $3,255 over and above the amount which it was bound and obligated to pay, and should have paid, for compressing said hay, under the terms of said contract; that the first carload of hay of the 436 carload shipments above referred to arrived in Galveston, and was delivered to said Steger & Co., and freight paid thereon, according to the weight fixed by said Western Weighing & Inspection Bureau, and represented by said Galveston, Harrisburg & San Antonio Railway Company, on or about the 31st day of May, 1915; and that all of the matters herein above alleged, with reference to the delivery of said hay and representations as to the weight thereof, the payment therefor, and damages sustained to said Steger by reason of the fraudulent acts and conduct of the defendants, have accrued since last-mentioned date.

Plaintiff's petition then concludes with the prayer that he recover against all of the defendants for: $10,370, being the actual amount paid to Wilbur Webb for hay never received by the plaintiff, caused by the inflation of said weights; $3,255 paid to Edmundson and Liverpool Hay & Grain Company for compressing hay, which was never compressed; $15,000 damages by reason of demurrage paid upon boat; $2,812.50, loss of profit which should have been realized, had the 1,085 tons of hay represented by the inflated weights been delivered as contracted for; and the sum of $25,000 as exemplary damages.

Upon the conclusion of the evidence, the plaintiff dismissed his suit against W. L. Edmundson and the Liverpool Hay & Grain Company, and these defendants dismissed their cross-action against the plaintiff. By such dismissals, W. L. Edmundson and the Liverpool Hay & Grain Company passed out of the suit, and therefore they will not be further mentioned as parties to the suit.

On the 19th day of July, 1917, the defendants Galveston, Harrisburg & San Antonio Railway Company and the Western Weighing & Inspection Bureau filed their original answer, the nature and effect of which are not disclosed by the record. On the 25th day of April, 1918, the same defendants filed their

first amended answer in lieu of their original answer, and therein and thereby for the first time, so far as is shown by the record, specially excepted to the plaintiff's petition upon the grounds that it affirmatively showed, on its face, that E. D. Steger, George A. Carden, and C. E. Schaff were necessary parties to the plaintiff's suit, in that it is shown by said petition that they were equally interested with the plaintiff in the subject-matter of the suit and that it was not shown thereby that the plaintiff had any right to prosecute the suit alone or in behalf of the other necessary parties. They also denied all and singular the allegations of the plaintiff's petition.

Defendant Wilbur Webb answers by pleas in abatement, many special exceptions, and by general denial, but, as he has not appealed from the judgment rendered against him, and is not a party to this appeal, we deem it unnecessary to further refer to his answer.

On the 26th day of February, 1924, all pleas in abatement, demurrers, and exceptions of the defendants to the plaintiff's petition came on to be heard, and on said date the court entered an order wherein it is recited that it being made to appear to the court that such pleas, demurrers, and special exceptions had been on file for more than a year without being called to the attention of the court, and it further appearing to the court that they were not called to the attention of the court until the day all parties announced ready for trial on the merits, such pleas, demurrers, and special exceptions were waived by defendants under the rules prescribed by the Supreme Court, and under the rules of the trial court they were therefore overruled.

On the 26th day of February, 1924, the Galveston, Harrisburg & San Antonio Railway Company and the Western Weighing & Inspection Bureau filed their second amended answer, wherein they say:

"Comes now the Galveston, Harrisburg & San Antonio Railway Company and the Western Weighing & Inspection Bureau" and, "still insisting on all of their general and special exceptions heretofore filed which have been overruled by the court, and not waiving but still insisting upon same, and file this their second amended original answer to the merits of plaintiff's cause of action."

Following the above-mentioned recitals they deny generally all allegations of the plaintiff's petition.

The cause proceeded to trial, before a jury, on the 26th day of February, 1924. On the 4th day of March, 1924, seven days after the beginning of the trial, counsel for the defendants Galveston, Harrisburg & San Antonio Railway Company and Western Weighing & Inspection Bureau filed and presented to the court the following motion:

"Come now the defendants Galveston, Harrisburg & San Antonio Railway Company and the Western Weighing & Inspection Bureau, in the above styled and numbered cause, and ask the court to exclude from the consideration of the jury the shipment of any car or cars of hay that arrived in Galveston prior to the 31st day of May, 1915, and for cause show: That the plaintiff in his petition alleges that the first carload of hay of the 436 carload shipments was delivered to Steger & Co. and the freight paid thereon according to the weight fixed by the Western Weighing & Inspection Bureau and represented by the Galveston, Harrisburg & San Antonio Railway Company on or about the 31st day of May, 1915; that this court has permitted the plaintiff, over the objection of the defendants, to introduce evidence showing that the major portion of said hay was received in Galveston prior to May 31, 1915; and that these defendants, under said allegation in said petition, would not be liable for any shortage of or damage to any hay that arrived in Galveston prior to May 31, 1915, and these defendants now ask that all evidence as to the shipments of hay arriving in Galveston prior to May 31, 1915, be excluded from the consideration of the jury in estimating and awarding any damages that they might find; that said cause of action, if any, for any and all hay arriving in Galveston prior to May 31, 1915, is barred by the statute of two years' limitation."

The undisputed evidence shows that for a great majority of hay after its arrival in Galveston prior to May 31, 1915, the freight bill or expense bill or receipt bill or delivery freight bill was furnished to said Steger & Co. showing the amount of hay contained in said car; "that no limitation plea was filed by these defendants for the reason that they relied upon the allegations in plaintiff's petition;" and these defendants now ask that all of the evidence pertaining to the hay which arrived in Galveston prior to May 31, 1915, be excluded and withdrawn from the consideration of the jury; but, if the court refuses to exclude said evidence from the consideration of the jury, then these defendants plead the statute of two years' limitation, and say that this cause of action is barred.

It is now insisted by appellants that this motion is a plea of limitation, and by appellee that it is no such plea. The cause was submitted to the jury upon special issues, which are here copied together with the answers of the jury thereto as follows:

"Special Issue No. 1. Was there an understanding between Wilbur Webb, acting in person, or through any agent, and the weigher or weighers who weighed the hay at Galveston, that the scale weights on the cars of hay listed on the freight bills, in evidence before you, should be increased over the true weights thereof? Answered: 'Yes.'

"Special Issue No. 2. Did the weigher or weighers at Galveston who weighed the carloads of hay listed in the freight bills, offered in evidence, increase the weight over the true weight thereof? Answered: 'Yes.'

"Special Issue No. 3. How many pounds was such weight increased over the true weight, if any? Answered: '2,232,756 pounds.'

"Special Issue No. 4. Did Steger & Co., or

their representatives, rely on the weights furnished by the Galveston, Harrisburg & San Antonio Railway Company, its weight, or its agents, as being the true weights of the hay when they paid the freight thereon? Answered: 'Yes.'

"Special Issue No. 4a. Did Steger & Co. or their representatives rely on the weights furnished by the Galveston, Harrisburg & San Antonio Railway Company, its agent, or its agents, as being the true weights of the hay when they paid the purchase price thereof? Answered: 'Yes.'

"Special Issue No. 4b. Did Steger & Co. or their representatives rely on the weights furnished by the Galveston, Harrisburg & San Antonio Railway Company, its agent, or its agents, as being the true weights of the hay when they paid the compressing charges on the same? Answered: 'Yes.'

"Special Issue No. 5. Did the defendant Galveston, Harrisburg & San Antonio Railway Company, or any of its agents, know, or have reason to believe, that plaintiff Steger & Co. was paying the compress charges and purchase price of the hay on the weights so furnished? Answered: 'Yes.'

"Special Issue No. 6. Did Steger & Co. charter the ship Aagot for the purpose of exporting said hay, relying on the belief that they had on hand the amount of hay shown by the weights so furnished them, if any? Answered: 'Yes.'

"Special Issue No. 7. Did Steger & Co. incur demurrage on the ship Aagot, as a proximate result of not having on hand the amount of hay shown by the weights so furnished them, if any? Answered: 'No.'

"Special Issue No. 8. State, in dollars and cents, the amount of demurrage so incurred and paid, if any. Not answered.

"Special Issue No. 9. Have Steger & Co. suffered damages by losing legal interest on the money paid out, if any, in reliance on the increased weights, if any, you have found? Answered: 'Yes.' "

Upon the answers of the jury to the issues submitted, judgment was rendered in favor of plaintiff against the Galveston, Harrisburg & San Antonio Railway Company, the Western Weighing & Inspection Bureau, and Wilbur Webb for the sum of $20,526.81, together with 6 per cent. per annum interest thereon from date of judgment until the same is paid.

The sum awarded does not include any recovery for the alleged loss of profit which plaintiff alleged should have been realized, had the 1,085 tons of hay represented by the inflated weight been delivered as contracted for; nor for any sum as exemplary damages, as the plaintiff, after the evidence was all in, did not insist on the submission of his claim for such damages; nor any sum for damages by reason of demurrage charges against plaintiff, as that issue was decided by the jury in favor of the defendants. From the judgment rendered the railway company and the weighing bureau have appealed.

[1, 2] It is first insisted by appellant that the court erred in sustaining their pleas in abatement, first, because it was shown upon the face of the petition that there were necessary parties who were not made parties to the suit, in that it was shown that the firm of Steger & Co., to whom the cause of action belonged, was composed of George W. Armstrong, the plaintiff, E. D. Steger, George A. Carden, and C. E. Schaff; that all of said parties were equally interested in said cause of action, and the petition does not show any right in Armstrong to prosecute the suit alone, or in behalf of the other necessary parties; second, that the undisputed facts show that since the institution of the suit George W. Armstrong has been adjudged a bankrupt, and therefore all his right, title, and interest in said cause of action is now vested in his trustee in bankruptcy and that such trustee is a necessary party to the suit; that the facts show that the principal creditors of Steger & Co. are George A. Carden and C. E. Schaff.

We cannot sustain these contentions of appellant. We think the first contention should be overruled upon two grounds:. First, because, when a suit is brought by only one of several joint owners of a cause of action, the right of the party bringing such suit to maintain the same can be questioned only by a plea in abatement, timely filed and presented to the court in which the suit is brought. Fant v. Farrier (Tex. Civ. App.) 253 S. W. 955; Perkins v. Terrell (Tex. Civ. App.) 214 S. W. 551; Smith v. Mosley, 74 Tex. 631, 12 S. W. 748; Smith v. Wingate, 61 Tex. 54; Hooper v. Hall, 30 Tex. 154. The record in the cause shows that the court properly overruled the plea in abatement, filed by appellants, because, if filed in due order of pleading, it was not called to the attention of the court until about six or seven years after the suit was filed and not until after appellants had filed their answer to the merits of the case; and, second, because it was alleged and shown that on or about the ―――― day of May, 1916, long before this suit was brought, the firm of Steger & Co. was, by mutual agreement, dissolved and terminated, and that the plaintiff, George W. Armstrong, was agreed upon by the members of said firm as the liquidating agent for the firm, and was, by an instrument in writing, appointed as such liquidating agent, and was thereby given full power and authority to collect and receive all assets, including claims and choses in action, owned and held by such firm, and it is alleged that plaintiff brings the suit for and in behalf of such firm and its individual members, as trustee, for the use and benefit thereof, and as liquidating agent under such agreement and appointment.

The provisions in the instrument of agreement between the parties, composing the firm of Steger & Co., empowered and authorized George W. Armstrong to collect and receive all assets, including claims and choses in action, owned and held by such firm. We think that such instrument confers upon Armstrong

the authority to do such acts as are necessary to accomplish the duties imposed upon him thereby. It follows that, if it was necessary to bring this suit, Armstrong had such authority, though he was not in express words so authorized.

Under the pleadings and facts shown, we think the suit was properly brought and that it could be maintained, even had the plea in abatement of appellants been timely filed and presented to the court. This conclusion is supported by the decisions in Hooper v. Hall, 30 Tex. 154; Edmonds v. White (Tex. Civ. App.) 247 S. W. 585; Fant v. Farrier (Tex. Civ. App.) 253 S. W. 955; Crouch v. Posey (Ky.) 69 S. W. 1001.

In Hooper v. Hall, it is said:

"That a suit may be brought in the name of one person for the use of another is expressly recognized in the statute regulating proceedings in the district court, and suits of this character are of familiar use when money demands are the foundation of the action. In such cases the allegations of the petition are tantamount to a previous assignment of the debt, and in effect pass the legal title to the judgment, by this admission of record, to the previous equitable owner of the debt."

[3, 4] The second contention should also be overruled for two reasons: First, because, if the trustee in bankruptcy was a necessary party to the suit, the failure to make him a party could only be reached by a plea in abatement. While it is shown that on the 4th day of March, 1924, seven days after the trial had begun, appellants filed their plea in abatement asking the dismissal of the suit because of the failure to make the trustee in bankruptcy a party plaintiff, there is nothing in the record to show that such plea was ever called to the attention of the court, or that any action was taken thereon by the court, and in such case the plea was waived. Article 1902, Complete Tex. St. of 1920, or Vernon's Ann. Civ. St. Supp. 1918; Graham v. McCarty, 7 S. W. 342, 69 Tex. 323; Texas & P. Ry. Co. v. Lynch (Tex. Civ. App.) 73 S. W. 65; Avery Co. v. Barker (Tex. Civ. App.) 243 S. W. 695. Second, because, as a matter of fact, the trustee in bankruptcy was neither a necessary or proper party to the suit. By paragraph (h) of section 5 of the Bankruptcy Act (U. S. Comp. St. § 9589) it is provided:

"In the event of one or more but not all of the members of a partnership being adjudged bankrupt, the partnership property shall not be administered in bankruptcy, unless by consent of the partner or partners not adjudged bankrupt; but such partner or partners not adjudged bankrupt shall settle the partnership business as expeditiously as its nature will permit, and account for the interest of the partner or partners adjudged bankrupt."

It is not contended that the copartnership of Steger & Co. was adjudged bankrupt, nor that any of the partners composing such copartnership were adjudged bankrupt except the plaintiff, George W. Armstrong; nor is it contended that any of the other partners, E. D. Steger, George A. Carden, or C. E. Schaff, were insolvent.

In Junck & Balthazard (D. C.) 169 F. 481, and Francis v. McNeal, 186 F. 481, 108 C. C. A. 459, it is held that, where one but not all of the members of a partnership is adjudged bankrupt, the partnership assets shall not be administered in bankruptcy, unless by consent of the partner or partners not adjudged bankrupt; but such partner or partners not adjudged bankrupt shall settle the partnership business and account for the interest of the partner adjudged bankrupt.

There is no contention here that the bankruptcy court had the consent of either Steger, Carden, or Schaff, the nonbankrupt partners, to administer the partnership estate of Steger & Co.; but, to the contrary, the undisputed evidence shows that all of the partners had, prior to the bankruptcy proceedings against Armstrong, authorized him to administer the estate of such partnership, and there was no evidence tending to show that such authority had been withdrawn.

It being specially provided by the Bankruptcy Act that the nonbankrupt parties shall settle, if they choose so to do, the partnership business and account for the interest of the partner adjudged bankrupt, such nonbankrupt partners may settle such partnership business personally or through their agent. Such being the law, the trustee in bankruptcy would have no authority to join as plaintiff in the suit brought by George W. Armstrong, as trustee or agent, for the use and benefit of the owners of the choses in action by virtue of the power conferred upon him by all partners of the firm of Steger & Co.

[5] Appellants requested the court, substantially, to submit to the jury the inquiries: (1) Did Steger & Co., or any of their agents or representatives know, prior to the time the hay reached its destination, that the weights thereof, at Galveston, furnished to them by the railroad company, were in excess of the real and true weights of the same? (2) Were any of such parties informed or notified that the weights so furnished were probably in excess of the true weights of the hay, and did they know or have reason to believe that such weights had been increased or inflated above the actual weights of the hay? (3) Could any of such parties, by the exercise of ordinary care, have ascertained that the true weights of the hay were being inflated or raised at Galveston, while the same was being unloaded and compressed? (4) Did any of such parties, at Galveston, exercise any degree to care to see that the weights furnished them by the railroad company were the correct weights of the hay, after they were notified such weights were probably in excess of the true weights, if it be found, by

the jury, that they were so notified while the hay was being unloaded and compressed? All of the requested issues were refused by the court and appellants assign such refusal as error.

Appellants' contention under such assignment is that, if Steger & Co., or any of their authorized agents, knew of the inflation of the weights of the hay at Galveston, or that, by the exercise of ordinary care, could have ascertained that such inflation had been made, prior to the time Steger & Co. paid for the hay, and they failed to exercise any degree of care to discover or correct such erroneous weights, and paid for the hay upon the weights as certified by the Western Weighing & Inspection Bureau, the agent of the railroad company, they cannot recover.

It is insisted that the evidence raised the requested issues, and therefore it was error for the court to refuse to submit them. We are of the opinion that there was no error in the refusal of the requested charges.

It is well settled, we think, that, under facts such as in this case, Steger & Co. would be under no obligation to suspect that the agent employed by the railway company was not fairly weighing the hay or, in other words, that he was certifying inflated weights of the hay to the railway company, by which Steger & Co. were to pay for the hay and by which they were to settle with the French Government. Moore v. Beakely (Tex. Com. App.) 215 S. W. 957; Labbe v. Corbett, 6 S. W. 808, 69 Tex. 509; Hoyt v. Bank (Tex. Civ. App.) 247 S. W. 637; Freshwater v. Hoyt (Tex. Com. App.) 259 S. W. 923; Oliver v. Huckins (Tex. Civ. App.) 244 S. W. 625.

[6] There was nothing to warrant the submission of the broad inquiry as to whether Steger & Co. or any of their agents knew of the inflated weights of the hay prior to such hay reaching its destination. The only pertinent inquiry as to whether Steger & Co. knew of the inflation of the weights of the hay was: Did they know that such weights had been inflated before they paid Webb for the hay and before they paid the compress for compressing the same. For this: If Steger & Co. had paid Webb for the mythical hay and had paid the compress for compressing same, knowledge gained after such payments were made, but before the hay reached its destination, would in no manner afford Steger & Co. an opportunity to protect themselves against injury already suffered by them, by reason of the false weights certified by the railroad's weighing agent. It is thus shown that a favorable answer to the requested charge would not defeat appellee's right to recover. If contention is sought to be made that the special charges, though erroneous, were sufficient to call the attention of the court to the matter sought to be submitted, so as to require a correct charge to be given, such contention should be asserted under an assignment of error to that effect. Parlin &

Orendorff v. Miller, 60 S. W. 881, 25 Tex. Civ. App. 190; Clevenger v. Blount (Tex. Civ. App.) 114 S. W. 868; El Paso Ry. Co. v. Kendall, 85 S. W. 61, 38 Tex. Civ. App. 221; and since there is no such assignment, such contention could not be sustained by this court on appeal.

We have serious doubts as to whether the evidence, relative to the knowledge of Steger & Co. of the inflation of the weights by the railroad weigher, before they paid for the hay, when considered as a whole, raises that issue.

It has been very aptly said by counsel for appellee that it was shown:

"That the checker of Steger & Co. had instructions to weigh every fifth bale that went through the compress."

He says:

"For instance if we pressed 1,500 bales that day he would weigh 300. I would add up the total weight of those 300 bales and divide it by 300 to get the average weight of the hay that was running through the press."

Further he says:

"I was only making a check of the weight of my compressed bales, as they came out; I was not checking any weights of bales in cars. I was keeping a check of the number of compressed bales. I, then, from that record, could easily ascertain the amount of hay that was being compressed per day."

It will thus be seen that there was no effort made whatever to reweigh or re-estimate the hay on given cars, but that the weights as furnished by the railway company were relied upon for all purposes, except for forming an estimate as to how much hay was put into compressed bales during a given day or period or for a particular steamer. The witness Ford says that one purpose of this was to enable the steamer captain to ascertain his displacement weight. Of course, there was no way of showing what particular hay came out of each one of these particular 436 car loads bought of Webb and out of any other cars bought of anybody else without keeping the hay of each car separate at the compress and then running it through the compress separately and making separate weights and estimates thereof. This was not done. There was no need of its being done if the expense bills were correct. It was a useless labor and expense for any one who was justified in relying upon receiving correct weights from the railway company.

Mr. Ford says that he and Mr. Edmondson went to the Galvez Hotel and saw Mr. Weatherford, a representative of Steger & Co., and told him that it appeared that the weights of this particular hay were running very heavy; and Mr. Weatherford said:

"Well, we are accepting railroad weights, expense bill weights on this hay; we are being paid on those weights, and we are paying you

on those weights for compressing, and that is as far as we are concerned about the weights."

The witness further says:

"That they had a contract on the railroad expense bills, to receive pay from the French government on the expense bills. When I called his attention to this matter, as I have already stated, Mr. Weatherford stated it made no difference to him; that he didn't give a continental about it."

The same witness says:

"I don't know anything about the weight of this hay, but I was there the whole time the hay was weighing in."

He also testified that he knows something about the way, manner, and methods of weighing out hay, or giving the weight, and then goes on to show that this weight was to enable the ship's captain to get his displacement weight.

J. P. Nash testified that some one purporting to represent Steger & Co. requested the privilege of being present when the hay was being weighed, and further that his office issued orders that the representatives of the hay people be permitted to be present.

It is difficult to see how this arousal of Mr. Edmondson's and Mr. Ford's suspicion of short weight and the communication of such suspicion to Mr. Weatherford could be said to bring home to Steger & Co. actual knowledge that they were being defrauded in the weights of the hay shown by the railroad expense bills. This testimony should be read in the light of the fact that Mr. Edmondson says:

"It was at the beginning of this thing that I had the conversation with Weatherford, I do not know the exact date."

It should be read in the light of the further fact that 436 carloads of hay were involved in this one transaction and that these carloads made more than 10 train loads, provided they all came in on trains of 43 cars each, and that they were received over a period of many weeks. A complete answer to the suspicion of Mr. Edmondson and Mr. Ford is found in the confidence which a purchaser of the hay, or his representative dealing therewith, had in the weights furnished by the railroad to rely thereon.

There was no duty on the part of Steger & Co. to be suspicious as to the fairness of the weights that were being furnished by the railway company. The faith of all parties in the weighing facilities of the carrier and in the correctness of its weights accounts for the provision of the contract stipulating "that such weights should be the basis of settlement between the parties."

• By the contract, the French government agreed to pay Steger & Co. for the hay on Western Weighing Association railroad weights at Galveston. This agreement, prop-

erly construed, means that the French government was to pay for the hay, using the weights of the Western Weighing Association railroad weights made in good faith and with some degree of accuracy as a basis of settlement. Neither party to the agreement could be heard to complain of a mere small inaccuracy in the weights made in good faith, which they had agreed to accept. This both parties fully understood at the time the agreement was entered into. Neither party could have thought that the other would be bound by the terms of the contract to accept the false certificate of weights furnished by the bureau as a basis of settlement. It must have been fully understood by Steger & Co. that, under such circumstances as happened, the French government could and would have legally demanded of them a reclamation of about $15,000, which it had paid for the mythical hay. It cannot reasonably be thought that Steger & Co., with this knowledge, would have paid Webb about $9,500 for the mythical hay, the compress company for pressing same, and the railroad freight charges on same, together amounting to more than $3,000, if they had known of the inflated weights before they made such payments. It is only reasonable to conclude that they would not, under such circumstances have taken such risk.

[7] Another good and sufficient reason for the refusal of all of appellants' special requested charges, whereby they sought an answer from the jury as to whether Steger & Co. or any of their agents could, by the exercise of ordinary care and diligence, have learned that the weights of the hay were being inflated, is that appellants did not plead such negligence as a defense to the plaintiff's suit. There was no pleading by the defendants of either estoppel or contributory negligence. The other special charges not heretofore discussed were properly refused, as they relate to purely evidentiary matters instead of an ultimate issue.

[8-11] The trial court permitted one Charles E. Craig, after testifying that he worked for defendant Wilbur Webb during May and June, 1915, to further testify, over objection of appellants, that as an employé of Webb he attended to billing out the hay shipped to the order of Webb at Galveston, which was sold to Steger & Co.; that he prepared the bills of lading for such shipments; that when he made out these bills of lading he had before him the true weights of the hay that went into each car shipped; that Webb told him that he had a contract with Steger & Co. to ship them the hay, and told him that in billing out the hay to raise the actual or true weight of the hay in the cars 4,000 pounds, except in small cars. and in those to raise such weights 2,000 pounds; that he raised the weights as instructed by Webb; that later Webb told him to increase the weights of the hay in each car in his bills

of lading to 5,000 pounds above the weights of the public weigher's weights of the same hay; that he complied with such instructions, and, before the Steger & Co. contract was completed, he inflated the weights of some of the cars of hay at least 6,000 pounds; that this was done under the instructions of Webb; that Webb told him that he (Webb) was getting by with such inflated weights; that the cars of hay were being weighed out at Galveston at 4,000 pounds above the public weigher's weights and that he might as well make a little bit more; that Webb was receiving information as to the weights of the hay as made by the Western Weighing & Inspection Bureau, for the railroad; that one car was certified by the bureau as weighing 15,000 pounds over the public weigher's weights; that he called this incident to the attention of Webb, and Webb laughed about it, and said the weighers at Galveston were treating him pretty nicely; that Webb was kept informed as to the reports coming from Galveston as to the final weights of the hay at Galveston, as made by the railway company; that he was informed of such weights by the weigher at Galveston and by Percy Owens, the representative of Webb, who was in Galveston; that he got such information by letters; that those letters reported the weights of the hay as made by the railroad company at Galveston; that, when he inflated the cars of hay in the bills of lading, he notified Percy Owens of the inflated weights. He testified further that he did not know when he billed out the hay that Webb intended to defraud Steger & Co., but that when the reports came in it was shown that the inflated weights made by him were practically being adopted by the weigher at Galveston and that made him think something was wrong; that he then had a suspicion that Webb was cheating somebody; that he thinks he continued to work for Webb about three weeks or a month after he found out that Webb's intention was to cheat somebody by the inflated weights.

The objection urged to this testimony on appeal is: First, that, as it had not been shown that the defendants railroad company and weighing bureau had knowledge of the facts testified to by the witness, it was not admissible against them; second, that the declarations of a coconspirator are not admissible against another conspirator, unless the conspiracy is first proven; and, third, that the plaintiff could not prove a conspiracy by the declarations of a coconspirator.

We have examined carefully the three bills of exception complaining of the admission of the testimony of Craig, and we find that none of them show that any of such testimony was objected to upon the second and third grounds now urged to it in this court; that is, no part of such testimony was objected to on the grounds that Craig was a coconspirator with Webb and others, and, that be-

ing such, he could not testify against his coconspirators unless the conspiracy was first proven, nor on the grounds that proof of the alleged conspiracy could not be made by a coconspirator.

If it were conceded that the testimony was not admissible upon the ground urged to its admission, we would not reverse the judgment because of its admission, as we think that appellee's right to recover did not depend on proof of the conspiracy alleged. It is alleged and shown that the agent of the defendant railroad company, upon whom it had imposed the duty of weighing incoming freight over its railroad, at Galveston, and that such agent, acting within scope of his employment, knowingly and falsely certified to the inflated weights of the hay at Galveston, and that such false certificate resulted in the injury and damage to Steger & Co. complained of. Where an agent acting within the scope of his authority has effected a transaction for his principal by fraudulent practices, the latter cannot exempt himself from the consequences of such fraudulent conduct by asserting that he had no knowledge of the fraud. In such cases the knowledge of the agent is imputed to his principal.

In 21 R. C. L. § 25, p. 844, it is said:

"All such statements, declarations, or acts as are within the scope of the agent's employment or impliedly possessed by him by virtue of his representative character are binding upon the principal. The maxims of the common law are respondeat superior and qui facit per alium facit per se, both of which are founded upon the principle that a duty rests upon every man, in the management of his own affairs, whether by himself or by his agents or servants, so to conduct them as not to injure another, and that if he does not do so, and another is thereby injured, he shall answer for the damage. Inasmuch as he has made it possible for his employé to inflict the injury, it is but just that he should be held accountable. The principal holds out his agent as competent and fit to be trusted, and thereby in effect he warrants his fidelity and good conduct in all matters within the scope of his agency. Corporations are liable to the same extent as natural persons."

The rule stated above is supported by the following authorities: Lake Shore & M. S. R. Co. v. Prentice, 13 S. Ct. 261, 147 U. S. 109, 37 L. Ed. 97; Penn. Co. v. Weddle, 100 Ind. 140.

A complete answer, however, to appellants' complaint of the admission of the testimony of Craig is that Wilbur Webb was a party defendant to the suit and the plaintiff was seeking a recovery against him for all the damages suffered by Steger & Co. by reason of his participation in the alleged and proven frauds, and that such recovery was awarded by the court. The testimony was clearly admissible against Webb, and, if appellants thought such testimony was in any way likely to mislead the jury in passing on the question of their liability, it was their duty to

request of the court a charge properly limiting such testimony. Walker v. Brown, 1 S. W. 797, 66 Tex. 556; Massie v. Hutchison, 222 S. W. 962, 110 Tex. 558; Dendinger v. Martin (Tex. Civ. App.) 221 S. W. 1095.

[12] Under their seventh proposition, appellants make the contention that there was no evidence to show that Stewart Marlin, who weighed and inflated the weights of the hay at Galveston, was the agent of the defendant railroad company, but, to the contrary, was shown to be the agent of the Western Weighing & Inspection Bureau, a corporation. Such contention is untenable; the undisputed evidence showing that the weigher of the bureau was, for the purpose of weighing the hay in question, the agent of the railroad company, and that in weighing the hay, he was performing the very services imposed upon him by the railroad company, and that he obtained his knowledge of the fact that Steger & Co. had contracted to pay Webb for the hay upon the weights as made by him while in direct performance of the duties for which he was employed.

[13] The contention of appellants that the court erred in permitting the introduction of the written contracts entered into between Edmondson and Webb, and between George A. Carden and E. D. Steger, and the French government, wherein it was stipulated that the weights of the Western Weighing & Inspection Bureau of the hay sold, compressed, and purchased should govern or control as a basis of settlement between said parties.

We overrule such contention, and hold that under the allegation of the plaintiff, in plaintiff's petition, both of said contracts were admissible in evidence. We also overrule the contention that a proven copy of the last-mentioned contract was erroneously admitted in evidence. It was shown that the original had been mislaid or lost and that diligent search had been made for the same and that it had not. been found.

We overrule appellants' contention that the court erred in not sustaining their plea of limitation. We do not think the motion made during the progress of the trial to exclude certain evidence, now asserted by them to be a plea of limitation, is such a plea, but if we are in error in so holding, such plea if good as a plea of limitation could not be sustained, in that the cause of action alleged by the plaintiff accrued at the time Steger & Co. discovered the alleged fraud and not before, and there was no evidence showing that such fraud was discovered at a time two years prior to the filing of plaintiff's suit. There is nothing in the petition of the plaintiff which can be reasonably construed as an allegation fixing the time of the discovery of the alleged fraud.

[14] Judge E. R. Campbell was permitted,. over objection of appellants, to read certain questions propounded by deposition to the defendant Wilbur Webb and to testify that the depositions as returned into court showed that the witness had refused to answer such questions. The objection urged was that the depositions had been quashed and were not admissible as evidence, and therefore proof of the contents thereof was inadmissible. Appellants assign the admission of the testimony of Judge Campbell as reversible error. This assignment cannot be sustained, as such testimony was withdrawn from the consideration of the jury upon the motion of appellants by the following charge:

"The testimony of Judge E. R. Campbell, which was admitted before you during the progress of the trial, is hereby withdrawn from your consideration, and you are instructed not to consider the same, nor to discuss the same for any purpose."

In view of the overwhelming evidence showing that Webb committed the fraud charged to him, and in view of the charge of the court, we think the error complained of was harmless.

[15] In conclusion, we find that it is shown by the evidence that the weighing agent of the railroad company, at Galveston, while acting within the scope of his authority knowingly and falsely inflated the weights of the Wilbur Webb hay purchased by Steger & Co. to the extent of 1,085 tons; that at the time he so inflated such weights he knew that Steger & Co. had agreed to pay Webb for the same upon the weights furnished by him as weigher for the defendant railroad company; that he knew that said hay was to be compressed and the charges fixed for such compressing was upon weights furnished by himself; that he obtained all such knowledge while in performance of his employment as the weighing agent of the defendant railroad company.

[16] It is well settled, we think, that all such statements, declarations, or acts of an agent as are within the scope of such agent's employment or impliedly possessed by him by virtue of his representative character are binding on the principal; that a duty rests upon every one, in the management of his own affairs, whether by himself or by his agent or servant, so to conduct them as not to injure another, and that if he does not do so, and another is thereby injured, he can be made to answer the damage. Inasmuch as he has made it possible for his employé to inflict the injury, it is but just that he should be held accountable. The principal holds out his agent as competent and fit to be trusted, and thereby, in effect, he warrants his fidelity and good conduct in all matters within the scope of his agency. 21 R. C. L. pp. 844, 845; Wichita Falls Compress Co. v. Moody (Tex. Civ. App.) 154 S. W. 1032.

We have examined and considered all of appellants' propositions and have concluded

that none of them presents reversible error, and therefore they are overruled.

Having reached the conclusions above expressed, it becomes our duty to affirm the judgment, and it is so ordered.

Affirmed.

### On Motion for Rehearing.

PER CURIAM. Rehearing denied.

PLEASANTS, C. J. (dissenting). When this cause was originally decided, I expressed to my associates my doubts as to the soundness of our conclusions, but did not then feel constrained to dissent from the conclusion reached by the majority of the court that the judgment should be affirmed. A further consideration of the record has led me to the conclusion that the judgment of the trial court cannot be affirmed without a disregard of well-settled principles and rules of law.

The opinion of Justice LANE is in the main sufficient and fair in its statement of facts disclosed by the record and, except as may be hereinafter indicated, the facts therein stated are the basis of my conclusions of law.

There can be no disagreement between my associates and myself as to the general rules stated in their opinion that a principal is responsible for damages caused by the negligence or wrongful act of his agent done in the scope of the agent's authority, and that knowledge or notice to an agent obtained or received by him, while acting for his principal in the matter to which the knowledge or notice pertains, is imputed to the principal. I do not think, however, that these rules can be applied in this case and the railroad company held liable for the damages caused appellees by the wrongful act of appellants' agent in conspiring with defendant Webb to inflate the weights of the hay and thereby enable him to deceive appellees and obtain payment from them for a larger quantity of hay than was delivered to them.

As I understand the record, the duty of this agent was to weigh freight for the railroad company and the shipper, for the purpose of determining the correct amount of freight charges. The railroad company was under no obligation and did not undertake to weigh products shipped on its road and furnish correct weights of such products for those who might contract with the shipper for their purchase. This being true, it follows that the wrongful act of the weigher in conspiring with Webb to inflate the weights of the hay so that he could swindle appellees, who had contracted to purchase the hay at a price based on the weights falsely given by the agent, was not an act done in the scope of the agent's authority for which his principal can be held liable.

I do not understand the opinion of the majority to hold that it was the duty of the agent of the appellant, who weighed the hay and gave the false weights, to weigh freight and furnish the weights to persons who contracted to purchase the freight from the shipper. If such is the holding there is no evidence in the record to support it. The conclusion of the majority that appellant should be held liable for the damages caused appellees by the wrongful act of the agent seems to be based solely on the ground that the agent, who entered into the conspiracy to do the wrongful act, knew that appellees were purchasing the hay on the faith of the weights given him and that his knowledge is imputable to appellants.

This is the substance of the final conclusion expressed in the opinion as follows:

"In conclusion we find that it is shown by the evidence that the weighing agent of the railroad company, Galveston, while acting within the scope of his authority knowingly and falsely inflated the weights of the Wilbur Webb hay purchased by Steger & Co. to the extent of 1,085 tons; that at the time he so inflated such weights he knew that Steger & Co. had agreed to pay Webb for the same upon the weights furnished by him as weigher for the defendant railroad company; that he knew that said hay was to be compressed and the charges fixed for such compressing was upon weights furnished by himself; that he obtained all such knowledge while in performance of his employment as the weighing agent of the defendant railroad company."

The undisputed evidence in the record shows that the weigher of the hay was the agent of appellant only for the purpose of weighing freight to determine the correct amount of freight charges. Of course, it was his duty to correctly weigh the freight, and any mistaken or fraudulent statement of the weights would not be binding upon the railroad or the shipper, and the railroad company might be liable for any damage which it might reasonably anticipate would be caused others by such negligent or fraudulent act of the agent, but, in order to charge it with such liability, the evidence must be sufficient to show that it had knowledge of facts from which it could reasonably anticipate that such damage would be sustained. I do not think the evidence in this case is sufficient to charge appellant with such knowledge.

I think the case of Friedlander v. T. & P. Ry. Co., 9 S. Ct. 570, 573, 130 U. S. 416, 425, 32 L. Ed. 991, announces the rule which should control in this case. In that case the facts disclosed that the bill of lading was executed by one Easton fraudulently and in collusion with one Lahnstein, and without receiving any cotton for transportation such as was represented in the bill of lading, and without the expectation on the part of said Easton of receiving such cotton. It was also alleged that Lahnstein had fraudulently conspired in another case with said Easton, whereby he signed and delivered to Lahn-

stein a similar bill of lading for cotton which had not been received and which Easton had no expectation of receiving; that the bill of lading was indorsed by Lahnstein and attached. to a draft on plaintiff. In passing upon the case, Chief Justice Fuller says:

"It is a familiar principle of law that where one of two innocent parties must suffer by the fraud of another, the loss should fall upon him who enabled such third person to commit the fraud; but nothing that the railroad company did or omitted to do can be properly said to have enabled Lahnstein to impose upon Friedlander & Co. The company not only did not authorize Easton to sign fictitious bills of lading, but it did not assume authority itself to issue such documents except upon the delivery of the merchandise. Easton was not the company's agent in the transaction, for there was nothing upon which the agency could act. Railroad companies are not dealers in bills of exchange, nor in bills of lading; they are carriers only, and held to rigid responsibility as such. Easton, disregarding the object for which he was employed, and not intending by his act to execute it, but wholly for a purpose of his own and of Lahnstein, became particeps criminis with the latter in the commission of the fraud upon Friedlander & Co., and it would be going too far to hold the company, under such circumstances, estopped from denying that it had clothed this agent with apparent authority to do an act so utterly outside the scope of his employment and of its own business. * * *

"The law can punish roguery, but cannot always protest a purchaser from loss, and so fraud perpetrated through the device of a false bill of lading may work injury to an innocent party, which cannot be redressed by a change of victim."

I am unable to see any distinction between a false and fraudulent bill of lading and a false and fraudulent certificate of weights in so far as the principle upon which the liability of a railway company for the issuance of such bill of lading or certificate of weights by one of its agents depends. In neither case can the agent issuing the false statement be said to be acting within the scope of his authority, and therefore his principals cannot be held liable for his wrongful act, unless ratified or acquiesced in with knowledge of the facts. The opinion of the majority seems to predicate the liability of appellant upon the theory that it knew or was charged with knowledge of the fact that the appellees were purchasing the hay upon the weights given by this unfaithful agent. As I have before stated, there is no evidence to sustain a finding that appellant had any knowledge of the contract between appellee and the shipper Webb, and the opinion of the majority sets out no evidence to sustain such finding, but rests its conclusion that appellant should be held liable on the legal assumption that the knowledge of the agent obtained by him when he entered into the conspiracy to commit the fraudulent act is imputable to his principal. Such theory, it

seems to me, is destructive of the principle of law that relieves one from liability for the unauthorized act of his agent not ratified or acquiesced in by him. There is no evidence tending to show that it was the duty of this agent to weigh the hay and furnish weights for those who might contract to purchase it from the shipper. This being so, the agreement made by the agent with Webb to furnish or give appellee false and inflated weights was not made in the performance of the duties of his employment, and appellant cannot be charged with notice of appellee's contract to purchase the hay at a price based on the weights furnished by the agent on the legal assumption that notice to its agent was notice to it.

I do not think the soundness of this conclusion is affected by the fact that it was the agent's duty to weigh the hay for the shipper and appellant railroad company for the purpose of ascertaining the correct amount to be charged for its transportation. The liability of the railway for excessive freight charges is not questioned, but it cannot follow from this that the wrongful act of the agent in inflating the weights for the purpose of defrauding appellees was an act done within the scope of his authority, for the consequences of which, known only to the faithless agent, appellant should be held liable.

I think these conclusions find support in the following cases: Pollard v. Vinton, 105 U. S. 7, 26 L. Ed. 998; Cohen Bros. v. Ry. Co., 98 S. W. 437, 44 Tex. Civ. App. 381; Baker v. Dittlinger Roller Mills (Tex. Civ. App.) 203 S. W. 798; McMahan v. Bank (Tex. Civ. App.) 160 S. W. 403.

I also think the evidence set out in the majority opinion is clearly sufficient to raise the issue of knowledge on the part of appellees, when they paid for the hay with money received by cashing drafts drawn on the French government, that the weights were inflated, and it is a reasonable inference from the evidence that appellees were either parties to the original conspiracy, or after learning of the inflation of the weights took their chances on selling to the French government without discovery on the basis of the inflated weights at a price largely in excess of that paid Webb for the mythical hay. If either of these facts is true, appellees are not entitled to recover from appellant the amount claimed by them, and this issue should have been submitted to the jury. I do not think the construction placed upon appellant's requested charges submitting these issues is a necessary and reasonable construction, and the trial court erred in not submitting the issues as requested.

There are other conclusions expressed in the opinion of the majority in which I do not concur, but, as they are not material in the determination of the issues raised by the appeal, I shall not discuss them.

For the reasons above stated, I respectfully dissent from the holding of the majority that the judgment should be affirmed, and am of opinion that it should be reversed, and the cause remanded.