WESTERN WEIGHING & INSPECTION
BUREAU et al. v. ARMSTRONG.
(No. 846–4565.)

(Commission of Appeals of Texas, Section A.
Nov. 17, 1926.)

1. Principal and agent ⬳159(1)—Principal is responsible for agent's negligence or wrong within scope of authority.

Principal is responsible for damages caused by agent's negligence or wrongful act done in scope of authority.

2. Principal and agent ⬳177(1)—Knowledge obtained by or notice to agent is imputed to principal.

Knowledge or notice, obtained or received by agent while acting for principal, in matter to which it pertains, is imputed to principal.

3. Railroads ⬳17—Railroad weigher's conspiracy with shipper to inflate weights to swindle purchasers held not within scope of authority.

Freight weigher's duty being to ascertain amount of freight, his conspiracy with shipper to inflate weights of hay, so that shipper could swindle purchasers at price based on such weights, held not within scope of weigher's authority, for which railroad company can be held liable.

4. Railroads ⬳17 — Knowledge from which railroad could reasonably anticipate damage to purchaser, from shipper, by railroad weigher's inflation of weights, must be shown.

To charge railroad company with liability for damage to purchasers of hay by its weigher's fraudulent inflation of weights, it must be shown to have had knowledge of facts from which it could reasonably anticipate such damage.

5. Railroads ⬳17—Railroad weigher's inflation of weights, by agreement with shipper, held not to charge railroad with notice of contract to purchase hay from shipper.

In absence of evidence that it was railroad weigher's duty to weigh hay and furnish weights for parties contracting to purchase it from shipper, railroad company cannot be charged with notice of contract to purchase at price based on weights furnished by such agent, on legal assumption that notice to him was notice to it, so as to render it liable to purchaser for damages from agent's fraudulent inflation of weights by agreement with shipper.

6. Fraud ⬳64(5)—Whether purchasers of hay from shipper knew weights were inflated by railroad weigher held for jury.

In action against railroad for damages to purchasers of hay, at price based on weights inflated by agreement between shipper and weigher, evidence held sufficient to take to jury questions whether plaintiffs knew, when paying, that weights were inflated, and were either parties to original conspiracy or took chances on reselling, without discovery, on basis of inflated weights, at price largely exceeding that paid.

Error to Court of Civil Appeals of First Supreme Judicial District.

Action by George W. Armstrong against the Western Weighing & Inspection Bureau and others. A judgment for plaintiff was affirmed by the Court of Civil Appeals (281 S. W. 244), and defendants bring error. Judgments reversed, and cause remanded to district court.

Garrison & Watson and Baker, Botts, Parker & Garwood, all of Houston, for plaintiffs in error.

Wallace & Taylor and Carden, Starling, Carden & Hemphill, all of Dallas, and Woods, King & John, of Houston, for defendant in error.

PLEASANTS, C. J. (dissenting). When this cause was originally decided, I expressed to my associates my doubts as to the soundness of our conclusions, but did not then feel constrained to dissent from the conclusion reached by the majority of the court that the judgment should be affirmed. A further consideration of the record has led me to the conclusion that the judgment of the trial court cannot be affirmed without a disregard of well-settled principles and rules of law.

The opinion of Justice LANE is, in the main, sufficient and fair in its statement of facts disclosed by the record, and, except as may be hereinafter indicated, the facts therein stated are the basis of my conclusions of law.

[1, 2] There can be no disagreement between my associates and myself as to the general rules stated in their opinion that a principal is responsible for damages caused by the negligence or wrongful act of his agent, done in the scope of the agent's authority, and that knowledge or notice to an agent, obtained or received by him, while acting for his principal, in the matter to which the knowledge or notice pertains, is imputed to the principal.

[3] I do not think, however, that these rules can be applied in this case and the railroad company held liable for the damages caused appellees by the wrongful act of appellants' agent in conspiring with defendant Webb to inflate the weights of the hay, and thereby enable him to deceive appellees, and obtain payment from them for a larger quantity of hay than was delivered to them.

As I understand the record, the duty of this agent was to weigh freight for the railroad company and the shipper, for the purpose of determining the correct amount of freight charges. The railroad company was under no obligation and did not undertake to weigh products shipped on its road and furnish correct weights of such products for those who might contract with the shipper for their purchase. This being true, it follows that the wrongful act of the weigher in conspiring with Webb to inflate the weights

of the hay so that he could swindle appellees, who had contracted to purchase the hay at a price based on the weights falsely given by the agent, was not an act done in the scope of the agent's authority, for which his principal can be held liable.

I do not understand the opinion of the majority to hold that it was the duty of the agent of the appellant, who weighed the hay and gave the false weights, to weigh freight and furnish the weights to persons who contracted to purchase the freight from the shipper. If such is the holding, there is no evidence in the record to support it. The conclusion of the majority that appellant should be held liable for the damages caused appellees by the wrongful act of the agent seems to be based solely on the ground that the agent, who entered into the conspiracy to do the wrongful act, knew that appellees were purchasing the hay on the faith of the weights given him and that his knowledge is imputable to appellants.

This is the substance of the final conclusion expressed in the opinion as follows:

"In conclusion, we find that it is shown by the evidence that the weighing agent of the railroad company, Galveston, while acting within the scope of his authority, knowingly and falsely inflated the weights of the Wilbur Webb hay purchased by Steger & Co. to the extent of 1,085 tons; that at the time he so inflated such weights he knew that Steger & Co. had agreed to pay Webb for the same upon the weights furnished by him as weigher for the defendant railroad company; that he knew that said hay was to be compressed and the charges fixed for such compressing was upon weights furnished by himself; that he obtained all such knowledge while in performance of his employment as the weighing agent of the defendant railroad company."

[4] The undisputed evidence in the record shows that the weigher of the hay was the agent of appellant only for the purpose of weighing freight to determine the correct amount of freight charges. Of course, it was his duty to correctly weigh the freight, and any mistaken or fraudulent statement of the weights would not be binding upon the railroad or the shipper, and the railroad company might be liable for any damage which it might reasonably anticipate would be caused others by such negligent or fraudulent act of the agent, but, in order to charge it with such liability, the evidence must be sufficient to show that it had knowledge of facts from which it could reasonably anticipate that such damage would be sustained. I do not think the evidence in this case was sufficient to charge appellant with such knowledge.

I think the case of Friedlander v. T. & P. Ry. Co., 9 S. Ct. 570, 573, 130 U. S. 416, 425, 32 L. Ed. 991, announces the rule which should control in this case. In that case the facts disclosed that the bill of lading was executed by one Easton fraudulently and in collusion with one Lahnstein, and without receiving any cotton for transportation, such as was represented in the bill of lading, and without the expectation on the part of said Easton of receiving such cotton. It was also alleged that Lahnstein had fraudulently conspired in another case with said Easton, whereby he signed and delivered to Lahnstein a similar bill of lading for cotton, which had not been received and which Easton had no expectation of receiving; that the bill of lading was indorsed by Lahnstein and attached to a draft on plaintiff. In passing upon the case, Chief Justice Fuller says:

"It is a familiar principle of law that, where one of two innocent parties must suffer by the fraud of another, the loss should fall upon him who enabled such third person to commit the fraud; but nothing that the railroad company did or omitted to do can be properly said to have enabled Lahnstein to impose upon Friedlander & Co. The company not only did not authorize Easton to sign fictitious bills of lading, but it did not assume authority itself to issue such documents, except upon the delivery of the merchandise. Easton was not the company's agent in the transaction, for there was nothing upon which the agency could act. Railroad companies are not dealers in bills of exchange, nor in bills of lading; they are carriers only, and held to rigid responsibility as such. Easton, disregarding the object for which he was employed, and not intending by his act to execute it, but wholly for a purpose of his own and of Lahnstein, became particeps criminis with the latter in the commission of the fraud upon Friedlander & Co., and it would be going too far to hold the company, under such circumstances, estopped from denying that it had clothed this agent with apparent authority to do an act so utterly outside the scope of his employment and of its own business. * * *

"The law can punish roguery, but cannot always protect a purchaser from loss, and so fraud perpetrated through the device of a false bill of lading may work injury to an innocent party, which cannot be redressed by a change of victim."

[5] I am unable to see any distinction between a false and fraudulent bill of lading and a false and fraudulent certificate of weights in so far as the principle upon which the liability of a railway company for the issuance of such bill of lading or certificate of weights by one of its agents depends. In neither case can the agent issuing the false statement be said to be acting within the scope of his authority, and therefore his principals cannot be held liable for his wrongful act, unless ratified or acquiesced in with knowledge of the facts. The opinion of the majority seems to predicate the liability of appellant upon the theory that it knew or was charged with knowledge of the fact that the appellees were purchasing the hay upon the weights given by this unfaithful agent. As I have before stated, there is no evidence to sustain a finding that appellant had any

knowledge of the contract between appellee and the shipper Webb, and the opinion of the majority sets out no evidence to sustain such finding, but rests its conclusion that appellant should be held liable on the legal assumption that the knowledge of the agent, obtained by him when he entered into the conspiracy to commit the fraudulent act, is imputable to his principal. Such theory, it seems to me, is destructive of the principle of law that relieves one from liability for the unauthorized act of his agent not ratified or acquiesced in by him. There is no evidence tending to show that it was the duty of this agent to weigh the hay and furnish weights for those who might contract to purchase it from the shipper. This being so, the agreement made by the agent with Webb to furnish or give appellee false and inflated weights was not made in the performance of the duties of his employment, and appellant cannot be charged with notice of appellee's contract to purchase the hay at a price based on the weights furnished by the agent on the legal assumption that notice to its agent was notice to it.

I do not think the soundness of this conclusion is affected by the fact that it was the agent's duty to weigh the hay for the shipper and appellant railroad company for the purpose of ascertaining the correct amount to be charged for its transportation. The liability of the railway for excessive freight charges is not questioned, but it cannot follow from this that the wrongful act of the agent in inflating the weights for the purpose of defrauding appellees was an act done within the scope of his authority, for the consequences of which, known only to the faithless agent, appellant should be held liable.

I think these conclusions find support in the following cases: Pollard v. Vinton, 105 U. S. 7, 26 L. Ed. 998; Cohen Bros. v. Ry. Co., 98 S. W. 437, 44 Tex. Civ. App. 381; Baker v. Dittlinger Roller Mills (Tex. Civ. App.) 203 S. W. 798; McMahan v. Bank (Tex. Civ. App.) 160 S. W. 403.

[6] I also think the evidence set out in the majority opinion is clearly sufficient to raise the issue of knowledge on the part of appellees, when they paid for the hay with money received by cashing drafts drawn on the French government, that the weights were inflated, and it is a reasonable inference from the evidence that appellees were either parties to the original conspiracy, or, after learning of the inflation of the weights, took their chances on selling to the French government without discovery, on the basis of the inflated weights, at a price largely in excess of that paid Webb for the mythical hay. If either of these facts is true, appellees are not entitled to recover from appellant the amount claimed by them, and this issue

should have been submitted to the jury. I do not think the construction placed upon appellant's requested charges submitting these issues is a necessary and reasonable construction, and the trial court erred in not submitting the issues as requested.

There are other conclusions expressed in the opinion of the majority in which I do not concur, but, as they are not material in the determination of the issues raised by the appeal, I shall not discuss them.

For the reasons above stated, I respectfully dissent from the holding of the majority that the judgment should be affirmed, and am of opinion that it should be reversed, and the cause remanded.

BISHOP, J. In this case the judgment of the district court was affirmed in an opinion by the Court of Civil Appeals for the First Supreme Judicial District. Motion for rehearing was overruled, Chief Justice PLEASANTS dissenting. 281 S. W. 244. The opinions contain a full statement of the case, which it is not necessary here to repeat. We agree with the views expressed in the dissenting opinion, and recommend that the judgments of both courts be reversed and the cause remanded to the district court.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both reversed, and cause remanded to the district court.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.