Bobby MORROW et al., Appellants,

v.

B. F. DANIEL et ux., Appellees.

No. 16157.

Court of Civil Appeals of Texas.

Dallas.

April 12, 1963.

Rehearing Denied May 10, 1963.

McMahon, Smart, Sprain, Wilson & Camp, and J. M. Lee, Abilene, and Bradford D. Corrigan, Jr., Dallas, for appellants.

Odeneal & Odeneal, Dallas, for appellees.

DIXON, Chief Justice.

This is an appeal from an order overruling a plea of privilege whereby appellants Stim-O-Stam Enterprises, Inc., and its President and Directors, individually, seek to have a cause of action against them transferred from Dallas County to Taylor County for trial.

Appellees, B. F. Daniel and wife, contend that venue properly lies in Dallas County under Subdivisions 7, 23 and 29a of Art. 1995, Vernon's Ann.Civ.St.

## FACTS

In September 1960 Stim-O-Stam Enterprises, Inc., was organized with appellants Bobby Morrow, as President and Norman O. Fitzgerald, Myrl Greathouse, Moses McCook and Oliver Jackson as Directors. Its purpose is to market a product "called Stim-O-Stam," which is said to have the effect of reducing muscle soreness and muscle fatigue, and add endurance for athletes. The corporation has its principal office and domicile in Abilene, Taylor County, Texas. All the individual appellees reside there.

The central figure in the fraudulent acts here involved is one M. W. Nunn, though he is not a party to the suit. The undisputed evidence shows that Nunn perpetrated a fraud against appellees in inducing them to purchase certain shares of corporation stock.[1]

It is conceded by appellees that appellants had no actual knowledge of Nunn's wrongful conduct until some time after the fraud had been committed. However appellees contend that Nunn's fraud must be imputed to the Corporation and its President and each of its Directors individually under the principles of respondeat superior, or agency, or negligence.

Nunn was not officially Secretary of the Corporation, but he was acting as Secretary. He was permitted to sell stock in the Corporation and accept payment and sign checks on the Corporation's bank account alone without the joint signature of anyone. He had sold considerable stock in the Stim-O-Stam Enterprises, Inc. He not only defrauded appellees of $18,000, but defrauded the Corporation itself of at least $40,000.

In March 1961 Nunn several times contacted appellant B. F. Daniel in Dallas for the purpose of selling appellant stock in Stim-O-Stam Enterprises, Inc. On one occasion Bobby Morrow was present. Daniel consulted his lawyer, who determined by inquiry from the proper authorities in Austin that Stim-O-Stam Enterprises, Inc. had been duly incorporated and that Bobby Morrow was President. On March 10, 1961 in Dallas, Texas Nunn presented a financial statement to appellant Daniel showing a net

[1] In oral argument it was stated that Nunn is now in a penitentiary in Arkansas for fraudulent conduct in matters which have no connection with this case.

worth of Stim-O-Stam Enterprises, Inc. of more than $60,000, as of February 1, 1961, which statement Nunn swore to before a notary public upon the attorney's insistence.

Daniel agreed to buy thirty-six shares in Stim-O-Stam Enterprises, Inc. for $18,000. Nunn had certificates with him, but they were not signed by the President, Bobby Morrow. So Nunn departed for Abilene, Texas purportedly to obtain Morrow's signature to the certificates after which he would return to Dallas to close the deal.

Nunn returned to Abilene but he did not obtain Morrow's signature to the stock certificates he had shown Daniel and his lawyer. Instead he returned these certificates to Morrow and told Morrow that Daniel had changed his mind and had decided not to buy the stock. Thereupon Morrow voided the certificates and placed them in the Corporation Stock book. Nunn then forged Morrow's name on some certificates of stock in a new and entirely different corporation named Stim-O-Stam, Inc.

It must be emphasized that Stim-O-Stam Enterprises, Inc. and Stim-O-Stam, Inc., though their names are similar, are not the same. They are not in any way related. Stim-O-Stam, Inc. was a corporation secretly organized by Nunn without the knowledge of Bobby Morrow or the Directors of Stim-O-Stam Enterprises, Inc. Somehow Nunn obtained a charter for his corporation, which is described by the parties hereto as a "phony" corporation. We shall hereinafter refer to Stim-O-Stam Enterprises, Inc. the true corporation, as Enterprises.

Nunn returned to Dallas and presented Daniel with the certificates of stock in Stim-O-Stam, Inc., the "Phony" corporation. These were the certificates to which Morrow's name had been forged. Nunn told Daniel he had submitted these certificates to Daniel's attorney, who had approved them. This was false. Daniel's attorney had not seen the false certificates. Daniel did not notice the change in the corporate name on the certificates.

Daniel had only $8,000 cash available at the time, so he could not pay the entire $18,000 in cash. But he had a farm in Denton County worth $32,800 clear of debt. Nunn informed Daniel that the corporation could accept only cash in payment—it could not accept real estate as whole or part payment for the corporation stock. It was then agreed that Daniel would deed his farm to Nunn at a price of $32,800 payable $10,000 in cash and the execution by Nunn of his note payable to Daniel in the amount of $22,800. The $10,000 cash payment was not actually to be made by Nunn to Daniel. Their agreement was that Nunn, himself out of his personal funds, would add the $10,000 to the $8,000 cash paid by Daniel and the total of $18,000 would then be paid to Enterprises for the shares of stock supposedly purchased by Daniel.

The evidence shows that Daniel agreed to open and did open a bank account for Nunn at Republic National Bank at Dallas, Texas, depositing the $8,000 to Nunn's credit. Nunn drew $4,000 out of this account at one time and $2,000 at another time, which sums he deposited to the credit of Enterprises, in its bank accounts, one account being in Abilene, Texas, the other in Houston, Texas. But Nunn immediately checked the $6,000 out of Enterprises' accounts and used the money for his own purposes.

Thus, appellee Daniel, instead of acquiring $18,000 worth of stock in Enterprises was left holding worthless stock in a different and worthless corporation—Stim-O-Stam, Inc. the "phony" corporation.

## OPINION

In their first, second, fifth and sixth points on appeal appellants contend that there was no evidence, or there was insufficient evidence to show any misrepresentation by Nunn as to the net worth of Enterprises; and there was no evidence or insufficient evidence to show that any fraud attributable to Enterprises was committed in Dallas County as required by Subd. 23, Art. 1995, V.A.C.S. in order to retain venue in Dallas County.

In support of these points appellants claim that the financial statement exhibited to Daniel in Dallas, Texas on March 10, 1961 is true and correct in showing that Enterprises had a net worth of more than $60,000 as of February 6, 1961. This document is a condensed, one page statement, not authenticated except by Nunn's affidavit.

Appellants' contention is refuted by the undisputed facts. Sometime after discovery of Nunn's fraud the parties attempted to compose their differences. Appellants furnished appellee with a financial statement dated April 30, 1961. This statement must be accepted as correct since it was prepared by certified public accountants employed by Enterprises. It was a somewhat detailed statement, being seven pages in length. It covers operations of Enterprises over a period of seven months preceding April 30, 1961. This includes February 6, 1961, the date of the statement presented to Daniel. The April 30, 1961 statement shows a net worth of only $15,145.87.

We have concluded that since the statement of April 30, 1961 must be accepted as correct, it necessarily follows that the statement of February 6, 1961 was false. Considerations of space forbid a detailed comparison of the two statements. Suffice it to say that computations based on corporation stock sales, merchandise sales, inventory, accounts receivable and operational expenses shown by the statement of April 30, 1961, demonstrate conclusively the falsity of the statement of February 6, 1961.[2]

■ It is not disputed that Nunn was acting within the scope of his authority as agent for Enterprises when on March 10, 1961 in Dallas he induced Daniel to agree to purchase 36 shares of stock in the latter corporation. The evidence supports a finding that the exhibition of the false statement of February 6, 1961, vouched for by Nunn, was a moving cause in inducing Daniel to so agree. So we must conclude that a fraud was perpetrated by Nunn in Dallas on March 10, 1961 while acting in the course of his employment as agent for Enterprises. Appellant Enterprises' first, second, fifth and sixth points are overruled.

■ The substance of appellants' third and fourth points is that there is no evidence or there is insufficient evidence to show that Nunn was acting as agent for Enterprises, when he exchanged stock certificates and delivered the false certificate to appellee Daniel.

We agree with appellants. Nunn was acting solely for himself when he substituted the certificates. He misrepresented the facts to his principal. Notice and knowledge of the fraudulent switch in the certificates was not brought home to appellants until after the exchange had taken place. Under the circumstances appellees failed to prove agency with reference to the exchange of the certificates. Our holding finds support in these cases: Smith v. M System Food Stores, 156 Tex. 484, 297 S.W.2d 112; Hilgenberg v. Elam, 145 Tex. 437, 198 S.W.

2. Statement of February 6, 1961 shows:
Surplus of February 6, 1961 ................................. $10,029.44
(Surplus could only have come from:
    a.  Selling merchandise at a profit, or
    b.  Paid in surplus)
Statement of April 30, 1961 shows:
    a.  A loss on operations at April 30, 1961. Assuming that this loss had not all occurred at February 6, 1961, there could have been no profit at that date. Total sales to April 30, 1961, were only $3,606.82. If sales were all profit (which is impossible), the profit could only be ................ $ 3,606.82
    b.  Paid in surplus at April 30, 1961, was only $1,800.00. If this had been paid in at February 6, 1961, the surplus would only be .......................................... $ 1,800.00
Surplus as of February 6, 1961 could not possibly have been more than ......................................... $ 5,406.82

2d 94; National Life & Accident Ins. Co. v. Ringo, Tex.Civ.App., 137 S.W.2d 828; American National Ins. Co. v. Denke, 128 Tex. 229, 95 S.W.2d 370, 107 A.L.R. 409; Western Weighing & Inspection Bureau v. Armstrong, Tex.Com.App., 288 S.W. 119; Binder v. Millikin, Tex.Civ.App., 201 S.W. 239. Appellants' third and fourth points are sustained.

Appellee argues that Enterprises benefited from the fraud perpetrated by Nunn, therefore became a party to his fraud. Appellants in their seventh point take the opposite view. It is true that of the $8,000 obtained by Nunn from Daniel, $6,000 was deposited in the bank accounts of Enterprises, part in Abilene and part in Houston, Texas. But there is no evidence that appellants knew of such deposits until later. And Enterprises received no benefit from the deposits, for Nunn immediately checked out the money and used it for his own purposes. We sustain appellants' seventh point.

■ In their eighth and ninth points appellants insist that there is no evidence to show that the individual appellants, Morrow, as President of Enterprises, and Fitzgerald, Greathouse, McCook and Jackson, as Directors, committed any fraudulent act or participated in or knew of Nunn's fraud until after the event.

Appellants' position is well taken. It is conceded that these individual appellants knew nothing of Nunn's fraud until afterwards. But appellee says that they were negligent in employing Nunn and allowing him to sign checks on the company's bank accounts without a joint signature of anyone. We make no findings as to whether this constitutes negligence. We simply say that if it was negligence, said negligence took place in Abilene, Taylor County, and in Harris County, not in Dallas County, Texas. Not having occurred in Dallas County such negligence could not serve to retain venue in Dallas County. Appellants' eighth and ninth points are sustained.

■ In their tenth point the individual appellants say that they are not necessary parties to this cause of action therefore venue as to them cannot be maintained in Dallas County under Subd. 29a of Art. 1995, V.A.C.S.

We agree with appellants. Appellee sought a joint and several judgment against appellants as joint tortfeasors. Under the circumstances the individual appellants are not to be considered necessary parties as contemplated by Subd. 29a, Art. 1995, V.A.C.S. Muncy v. General Motors Corp., Tex.Civ.App., 357 S.W.2d 430; Lewis Boggus Motors, Inc. v. Hill, Tex.Civ.App., 340 S.W.2d 957; Harrington v. North American Union Life Ins. Co., Tex.Civ.App., 308 S.W. 2d 580; Union Bus Lines v. Byrd, 142 Tex. 257, 177 S.W.2d 774; Moreland v. Hawley Independent School Dist., 140 Tex. 391, 168 S.W.2d 660; Tarrant v. Walker, 140 Tex. 249, 166 S.W.2d 900. The tenth point of the individual appellants is sustained.

■ In their eleventh and twelfth points appellants complain that it was error to permit the introduction into evidence of unauthenticated copies of the checks for $4,000 and $2,000 signed by Nunn and deposited to the accounts of Enterprises. Also to permit introduction of an unauthenticated bank statement showing the deposit of $8,000 by Daniel in the Republic National Bank of Dallas and the subsequent withdrawal of $6,000 by Nunn.

If the introduction of these instruments was error, it was harmless error. In sustaining appellants' seventh point we held that Enterprises did not benefit from the $6,000 deposited to its account by Nunn, for he immediately withdrew the money and used it for his own purposes. The eleventh and twelfth points are overruled.

The judgment insofar as it overrules the plea of privilege of Stim-O-Stam Enterprises, Inc. is affirmed. The judgment insofar as it overrules the pleas of privilege of appellants Bobby Morrow, Norman O.

**720**

Fitzgerald, Myrl Greathouse, Moses McCook and Oliver Jackson is reversed and that portion of the cause of action is remanded to the trial court with directions to sustain the pleas of privilege of said individual appellants.

Affirmed in part and reversed in part.