Affirmed and Opinion filed January 23, 2007








Affirmed and Opinion filed January 23, 2007.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00100-CV

____________

 

SAM ZARZANA, Appellant

 

V.

 

DONALD ASHLEY AND CHARLES ASHLEY
D/B/A MEINEKE CAR CARE #10, Appellees

 



 

On Appeal from the 190th
District Court

Harris County, Texas

Trial Court Cause No. 2005-14913

 



 

O P I N I O N

In four issues, appellant Sam Zarzana appeals from the
trial court=s grant of summary judgment in favor of appellees
Donald Ashley and Charles Ashley d/b/a Meineke Car Care #10 on his claims of
negligence, fraud, violation of the Deceptive Trade Practices‑Consumer
Protection Act, and civil conspiracy.  We affirm.  








I.  Factual and Procedural Background

On March 5, 2003, Sam Zarzana went to Meineke Car Care #10 
(AMeineke@) in Houston,
Texas, co-owned and operated by Donald Ashley, to replace the muffler and
exhaust pipe on his truck.  Ashley typically managed the store, but he was not
present on this day.  His longtime employee, Ken Samuel, was present and acted
as manager in Ashley=s absence.  According to Zarzana, after an
employee who referred to himself as AShorty@ finished
replacing the parts on Zarzana=s truck, the employee informed Zarzana
that his state safety inspection sticker had expired.  Shorty offered to
perform an inspection and provide a current sticker if the truck passed, all
for about forty dollars, and Zarzana agreed.  Meineke did not display any signs
on its premises indicating it served as an official state safety inspection
facility and had no equipment capable of producing official or other inspection
stickers.  Zarzana admits he never saw a state inspection sign at Meineke but
maintains he did know that only state-designated facilities may perform safety
inspections and issue inspection stickers.

Shorty then told Zarzana to continue waiting in the office
while he inspected the truck, and Zarzana complied.  After completing the
alleged inspection, Shorty told him the truck passed and accordingly applied a
purported state safety inspection sticker to the windshield.  Although he
admits he did not see all of the repair work or witness Shorty perform the
inspection, Zarzana maintains that he saw Shorty place the sticker onto the
windshield.  Zarzana then paid Samuel the sum due in cash, which Zarzana claims
included an amount for the inspection, and left the store.  Zarzana=s sales receipt
shows he paid for three exhaust system parts but does not reveal any charges
for a state safety inspection or sticker.  He does not know whether Shorty was
present in the office during payment. 

According to Zarzana, some months after his trip to
Meineke, a Houston Police officer arrested him for possessing a counterfeit
safety inspection sticker.  He claims he was incarcerated for approximately
eighteen hours and charged for the offense, which was dismissed several months
later.    








Zarzana filed suit against Meineke, seeking recovery for Aprofound mental
anguish@ as well as
various expenses and lost wages arising from his incarceration and criminal
prosecution.  In his original petition, Zarzana first alleged that Meineke,
through its agent, Shorty, knowingly and intentionally committed an
unconscionable action under the Deceptive Trade Practices‑Consumer
Protection Act (the ADTPA@).  He further
contended Meineke committed negligence or gross negligence Ain permitting a
situation to exist in their place of business in which a scam such as is
involved herein is possible@ and that such negligence proximately
caused his damages.  Zarzana also alleged that Meineke was vicariously liable
for Shorty=s fraud, as he was acting within the course and scope
of his employment and had either actual or apparent authority to inspect
Zarzana=s truck and issue
a safety inspection sticker. 








Meineke moved for summary judgment, claiming Zarzana
produced no evidence that an employee named Shorty worked at the store or that
Shorty, or any other Meineke employee, had performed an inspection or sold
Zarzana an inspection sticker.  Meineke attached affidavits of Ashley and
Samuel stating that neither knew or had ever employed someone named AShorty@ and noting that
Zarzana=s service receipt
listed no charges for an inspection.  Therefore, Meineke contended, it was
generally entitled to a no-evidence summary judgment.  Meineke also sought a
traditional summary judgment, first claiming that Zarzana provided no evidence
of negligent supervision because it was unforeseeable that a Meineke employee
could perform a state safety inspection and issue a counterfeit inspection
sticker, given that the store does not operate as a state inspection facility,
no signs indicated that it did, and the store had no equipment capable of
producing an inspection sticker.  For similar reasons, Meineke further argued
that, even had an alleged employee sold a counterfeit sticker, Zarzana produced
no evidence that such action fell within the course and scope of employment
because, according to Ashley=s and Samuel=s affidavits,
Meineke employees had authority only to install tail pipes, brakes, and
catalytic converters and perform light mechanical work.  Therefore, Meineke
reasoned, Zarzana could not impute Shorty=s alleged conduct
to Meineke under the doctrine of respondeat superior.  Meineke finally
contended it was also not vicariously liable under respondeat superior for
Shorty=s alleged actions
because they constitute intentional, serious criminal activities unforeseeable
to Meineke, again given its employees= duties.  Meineke
did not expressly address Zarzana=s DTPA claim in
its motion.  

Thereafter, Zarzana filed a response to the motion for
summary judgment along with an affidavit swearing:  (1) that a worker named AShorty@ offered to
inspect his truck, (2) he waited in the Meineke office while the inspection
occurred, (3) he watched AShorty@ place the sticker
on his windshield after purportedly passing inspection, and (4) he paid for the
amount requested which included the amount for the inspection.  Zarzana further
stated in his affidavit that A[f]rom all appearances, Shorty was an
employee engaged in the furtherance of the shop=s business@ and he Arepresented to [Zarzana]
that he was qualified and authorized to [conduct the inspection].@  In his written
response, Zarzana maintained that summary judgment for negligent supervision
was improper because Shorty=s alleged conduct was foreseeable because Ait is certainly
foreseeable that dishonest employees might defraud a customer if [an employer]
is not present to prevent it@ or otherwise has no procedures to make
such fraud impossible.  Zarzana further noted that Meineke=s motion failed to
address his DTPA claim.  

On the same day, Zarzana filed a second amended original
petition in which he reasserted all his previous causes of action and added a
new allegation of civil conspiracy to defraud.[1] 
Meineke never amended its motion to expressly address the later-pleaded civil
conspiracy claim or to address the DTPA claim.[2]








The trial court granted Meineke=s motion for
summary judgment without specifying the grounds.  Zarzana now appeals, claiming
fact issues exist regarding negligent supervision, vicarious fraud, violation
of the DTPA, and civil conspiracy to defraud, which preclude summary judgment.

II.  Standard of Review

The standard of review for a traditional motion for summary
judgment is whether the successful movant at the trial level carried its burden
of showing that there is no genuine issue of material fact and that judgment
should be granted as a matter of law.  See Tex. R. Civ. P. 166a(c); KPMG Peat Marwick v. Harrison
County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999).  A defendant who
either conclusively negates at least one of the essential elements of each of
the plaintiff=s causes of action or conclusively establishes all
elements of an affirmative defense is entitled to summary judgment.  Johnson
v. Felts, 140 S.W.3d 702, 706 (Tex. App.CHouston [14th
Dist.] 2004, pet. denied).  In order to conclusively negate at least one of the
requisite elements, the motion must identify or address the cause of action or
defense and its elements.  Id.  Evidence is conclusive only if
reasonable people could not differ in their conclusions.  City of Keller v.
Wilson, 168 S.W.3d 802, 816 (Tex. 2005).  Under this traditional standard,
this court must take as true all evidence favorable to the nonmovant and must
make all reasonable inferences in the nonmovant=s favor.  See
id.  








In contrast, the party moving for no‑evidence summary
judgment must assert only that there is no evidence of one or more essential
elements of a claim or defense on which the non‑movant would have the
burden of proof at trial.  See Tex.
R. Civ. P. 166a(i).  The burden then shifts to the non‑movant to
produce evidence raising a fact issue on the challenged elements.  See id.  A
no‑evidence summary judgment is improper if the respondent brings forth
more than a scintilla of probative evidence to raise a genuine issue of
material fact.  Id.; see Forbes Inc. v. Granada Biosciences, Inc.,
124 S.W.3d 167, 172 (Tex. 2003).  Less than a scintilla of evidence exists when
the evidence is so weak as to do no more than create a mere surmise or
suspicion of a fact.  Forbes, 124 S.W.3d at 172.  More than a scintilla
of evidence exists if it would allow reasonable and fair‑minded people to
differ in their conclusions.  Id.  As with a traditional summary
judgment, we view the evidence in the light most favorable to the non‑movant,
disregarding all contrary evidence and inferences.  King Ranch, Inc. v.
Chapman, 118 S.W.3d 742, 751 (Tex. 2003).

Moreover, when the trial court does not specify the basis
for its summary judgment, we will affirm the judgment if any one of the
theories advanced in the motion is meritorious.  Joe v. Two Thirty Nine
Joint Venture, 145 S.W.3d 150, 157 (Tex. 2004).  In other words, the
appealing party must show each independent ground alleged is insufficient to
support the summary judgment granted.  See Star‑Telegram, Inc. v. Doe,
915 S.W.2d 471, 473 (Tex. 1995). 

III.  Analysis

A.  Negligent Supervision








In issue two, Zarzana contends the trial court erred in
granting summary judgment on his negligent supervision claim.[3] 
Meineke counters that summary judgment was proper because Zarzana provided no
evidence that the conduct of AShorty,@ if it occurred,
was foreseeable to Meineke.[4] 
A claim of negligent hiring and supervision is based on an employer=s direct
negligence instead of the employer=s vicarious
liability for the torts of its employees.  Verinakis  v. Med. Profiles, Inc.,
987 S.W.2d 90, 97 (Tex. App.CHouston [14th Dist.] 1998, pet. denied). 
To prevail in a negligence action, the plaintiff must prove:  (1) a legal duty
owed to the plaintiff, (2) a breach of that duty by the defendant, and (3)
damages proximately caused by the breach.  Greater Houston Transp. Co. v.
Phillips, 801 S.W.2d 523, 525 (Tex. 1990).  

Generally, an employer has a duty to control its
employees.  See Otis Eng=g Corp. v. Clark, 668 S.W.2d 307,
309 (Tex. 1983).  Further, an employer may be liable for a plaintiff=s injuries that
arise as a result of the employment, if the negligence in supervising the
employee is the proximate cause of the injuries to the plaintiff.  Dailey v.
Albertson=s, Inc., 83 S.W.3d 222,
227 (Tex. App.CEl Paso 2002, no pet.).  The questions of duty and
proximate cause both hinge on a determination of foreseeability of harm.  Mellon
Mortgage Co. v. Holder, 5 S.W.3d 654, 659 (Tex. 1999).  Foreseeability
requires Athat the injury be of such a general character as
might reasonably have been anticipated.@  Id. at
655.  To impose liability in negligent hiring and supervision cases, sufficient
evidence must exist indicating that the defendant knew or should have known of
the employee=s incompetence or potential for causing harm.  See
Phillips, 801 S.W.2d at 526; Ianni v. Loram Maint. of Way, Inc., 16
S.W.3d 508, 514 (Tex. App.CEl Paso 2000, pet. denied) (citing Phillips);
see also Wrenn v. G.A.T.X. Logistics, Inc., 73 S.W.3d 489, 496B97 (Tex. App.CFort Worth 2002,
no pet.).








Zarzana contends that employers have Aan absolute duty
to see to it that his business is operated with basic honesty@ and can Aalways foresee
that employees . . . left unsupervised to operate a business . . . might
operate that business in a dishonest fashion to the detriment of the consuming
public.@  However, this
contention overstates the employer=s duty to control
employees and disregards the very definitions of negligence and foreseeability. 
Indeed, Zarzana has not produced or pointed to any evidence that Meineke knew
or should have known of Shorty=s propensity for criminality.  The record
reveals no evidence that any prior similar incidents involving Shorty occurred
or that anyone at Meineke otherwise knew of his criminal disposition.  See
Knight v. City Streets, L.L.C., 167 S.W.3d 580, 584 (Tex. App.CHouston [14th
Dist.] 2005, no pet.) (affirming summary judgment dismissing negligent
supervision claim against nightclub for failing to stop employee=s assault on third
party where evidence showed employer did not know of employee=s general
propensity for aggression but only that he may be aggressive); Garrett v.
Great W. Distrib. Co. of Amarillo, 129 S.W.3d 797, 804 (Tex. App.CAmarillo 2004, pet.
denied) (affirming summary judgment dismissing negligent supervision action
against employer based on employees= assault of third
party where no evidence showed that employees exhibited violent or aggressive
tendencies or engaged in fights before incident and no evidence suggested
employer knew employees had violent propensities before incident); Dailey,
83 S.W.3d at 227B28 (affirming summary judgment dismissing
negligent supervision claim against supermarket based on employee=s assault against
customer, where only evidence of foreseeability of harm was that employee made
loud comments and had heated exchange with customer).  Moreover, the record
contains no evidence that Meineke could have foreseen even the general nature
of the incident, given that the store did not operate or purport to operate as
a state-licensed inspection facility and had no equipment or other means to
produce inspection stickers on its premises.  Accordingly, we hold that Meineke
conclusively negated the duty and proximate cause elements of Zarzana=s negligent
supervision claim by demonstrating a lack of foreseeability; thus, the trial
court properly granted summary judgment on this claim.  

We overrule Zarzana=s second issue.   

B.  Vicarious Fraud








In issue three, Zarzana asserts that, because employers are
vicariously liable for employees= fraud committed
within the scope of the employees= general
authority, fact issues remain as to whether Shorty acted within the scope of
his authority as a Meineke employee by selling a counterfeit inspection
sticker.  To hold an employer vicariously liable for the misconduct of its
employee, a plaintiff must prove:  (1) an agency relationship existed between
the employee and the employer, (2) the employee committed the act, and (3) the
act was in the course and scope of the employee=s authority.  See
F.F.P. Operating Partners, L.P. v. Duenez, No. 02‑0381, ___ S.W.3d
____, 2006 WL 3110426, at *5 (Tex. Nov. 3, 2006); Baptist Mem=l Hosp. Sys. v.
Sampson, 969 S.W.2d 945, 947 (Tex. 1998).  To show an employee acted within
the course and scope of his employment, the plaintiff must demonstrate the
conduct occurred (1) within the general authority given the employee, (2) in
furtherance of the employer=s business, and (3) for the accomplishment
of the object for which the employee was employed.  Mata v. Andrews Transp.,
Inc., 900 S.W.2d 363, 366 (Tex. App.CHouston [14th
Dist.] 1995, no writ); see also Leadon v. Kimbrough Bros. Lumber Co.,
484 S.W.2d 567, 569 (Tex. 1972).  Actual authority includes both express and
implied authority and usually denotes the authority a principal (1)
intentionally confers upon an agent, (2) intentionally allows the agent to
believe he possesses, or (3) by want of due care allows the agent to believe he
possesses.  2616 South Loop L.L.C. v. Health Source Home Care, Inc., 201
S.W.3d 349, 356 (Tex. App.CHouston [14 Dist.] 2006, no pet.). 
Apparent authority requires (1) a reasonable belief in the agent=s authority, (2)
generated by some holding out or neglect of the principal, and (3) justifiable
reliance on the authority.  Id.  ABoth actual and
apparent authority are created through conduct of the principal communicated
either to the agent (actual authority) or to a third party (apparent
authority).@  Huynh v. Nguyen, 180 S.W.3d 608, 622B23 (Tex. App.CHouston [14th
Dist.] 2005, no pet.).  To determine apparent authority, only the conduct of
the principal may be considered; representations made by the agent of his
authority have no effect.  Id. at 623.  








An employee=s intentional, tortious conduct falls
within the scope of employment when the conduct, even if contrary to express
orders, is of the same general nature as that authorized or incidental to the
conduct authorized.  Durand v. Moore, 879 S.W.2d 196, 199 (Tex. App.CHouston [14th
Dist.] 1994, no writ); see GTE Sw., Inc. v. Bruce, 998 S.W.2d 605, 617B18 (Tex. 1999)
(noting that employers are liable for intentional, unauthorized torts of
employees Aclosely connected with the [employee=s] authorized
duties@).  However,
employers are generally not liable for serious criminal acts of employees that
are unforeseeable considering the employee=s duties.  See
Millan v. Dean Witter Reynolds, Inc., 90 S.W.3d 760, 768 (Tex. App.CSan Antonio 2002,
pet. denied); Hooper v. Pitney Bowes, Inc., 895 S.W.2d 773, 778 (Tex.
App.CSan Antonio 1995,
writ denied); see also Ross v. Marshall, 426 F.3d 745, 764B65 & n.85 (5th
Cir. 2005) (A[U]nder Texas law, an agent=s >serious criminal
activity= is almost never
taken within the scope of authority granted by the principal[.]@).        








Assuming a Meineke employee named Shorty in fact sold
Zarzana a counterfeit inspection sticker, Meineke nonetheless conclusively
established that Shorty acted outside the scope of employment.  Through the
affidavits of both Ashley and Samuel, Meineke provided evidence that its
services include only installation of tail pipes, brakes, and catalytic
converters, and performance of light mechanical work.  The affidavits also
underscored Meineke=s lack of equipment capable of producing
official or counterfeit state inspection stickers.  Zarzana did not directly
challenge any of this evidence.  Moreover, Zarzana does not contend, and we do
not find, that the sale of counterfeit inspection stickers is closely connected
or incidental to the authorized conduct of physically installing parts and
performing mechanical work, nor can we say such activity accomplished the
objects for which Meineke allegedly hired Shorty.  Compare Buck v.
Blum, 130 S.W.3d 285, 289 (Tex. App.CHouston [14th
Dist.] 2004, no pet.) (affirming summary judgment for hospital in sexual
assault claim where doctor allegedly made inappropriate sexual contact with
patient during neurological examination, and, thus, act was not closely
connected to employment tasks and did not further object of employment),
Wrenn, 73 S.W.3d at 494B95 (affirming summary judgment for
employer in assault claim where employee forklift operator had authority only
to operate forklift and assist and direct temporary employees, and employer
prohibited use of physical force or verbal threats), and Morrow v. Daniel,
367 S.W.2d 715, 718B19 (Tex. Civ. AppCDallas 1963, no
writ) (finding no evidence employee was acting as agent of employer company
where employee purported to sell company=s stock
certificates but in fact, unbeknownst to company, substituted and sold phony
company=s certificates to
unknowing third party), with Durand, 879 S.W.2d at 200 (affirming
finding that doorman acted within scope of employment at nightclub in
assaulting patron where evidence showed doorman had authority to control
admittance of customers into club and assault constituted Aoverzealous
enforcement of the criteria and procedures used to select waiting customers for
admittance into the club@).  In addition, as Meineke notes, Shorty=s alleged
counterfeiting activities could potentially constitute a felony under Texas
law.  See, e.g., Tex. Penal Code
Ann. ' 37.10(a), (c)B(d)  (Vernon Supp.
2006) (tampering with governmental records).  We find such serious criminal
conduct unforeseeable given a Meineke employee=s authorized
duties.  See Millan, 90 S.W.3d at 768 (holding that investment company
was not vicariously liable for broker=s embezzlement of
thousands of dollars from client, which in no way related to his authorized
brokerage duties and thus greatly exceeded scope of his authority).  

Zarzana=s contention that Shorty had actual or
apparent authority to sell counterfeit or even valid safety inspection stickers
is unpersuasive.  To demonstrate Shorty=s authority,
Zarzana largely relied on the assertion in his affidavit that Shorty Arepresented to me
that he was qualified and authorized to do this work.@  Indeed, he
contends that the trial court erred in determining scope of employment as a
matter of law Aparticularly@ because Zarzana Awas told by
[Shorty] that [Shorty] was authorized to conduct safety inspections.@  Shorty=s alleged
representations have no effect on our analysis because, as noted, an agent=s actual or
apparent authority stems solely from the principal=s conduct, and any
of the agent=s representations are wholly irrelevant in determining
apparent authority.  See Huynh, 180 S.W.3d at 623.  Moreover, the conclusory statement
in his affidavit that A[f]rom all appearances Shorty was an
employee engaged in the furtherance of [Meineke=s] business@ is insufficient
in itself to create a fact issue regarding apparent authority.       

Therefore, because Meineke conclusively established that
Shorty acted outside the scope of employment, we hold that the trial court
properly granted summary judgment in favor of Meineke on the claim for
vicarious fraud.  

We overrule Zarzana=s third issue.  








C.  Vicarious DTPA Violation and Civil Conspiracy

Finally, in issue four, Zarzana contends the trial court
erred in granting summary judgment on his vicarious DTPA and civil conspiracy
claims because Meineke did not explicitly move for summary judgment these
claims.  A motion for summary judgment must expressly present the grounds upon
which it is made and must stand or fall on such grounds.  McConnell v.
Southside Indep. Sch. Dist., 858 S.W.2d 337, 341 (Tex. 1993).  Thus, if a motion for summary judgment
fails to address a pleaded cause of action, the trial court is generally
precluded from granting summary judgment on such action as a matter of law.  Black
v. Victoria Lloyds Ins. Co., 797 S.W.2d 20, 27 (Tex. 1990); Chessher v.
Sw. Bell Tel. Co., 658 S.W.2d 563, 564 (Tex. 1983).  This holds true
regardless of the unaddressed claim=s validity.  See Alder v. Laurel,
82 S.W.3d 372, 375 (Tex. App.CAustin 2002, no pet.) (A[E]ven though a cause of action may
not be viable, a party may obtain summary judgment only on those causes of
action expressly addressed in the summary judgment motion.@).  However, where a defendant
conclusively disproves an element common among pleaded causes of action, summary judgment
is proper.  See Dubose v. Worker=s Med., P.A., 117 S.W.3d 916,
922 (Tex. App.CHouston [14th Dist.] 2003, no pet.); Lampasas v.
Spring Ctr., Inc., 988 S.W.2d 428, 435B36 (Tex. App.CHouston [14th
Dist.] 1999, no pet.).  Similarly,
summary judgment may be granted on later-pleaded causes of action if the
grounds actually asserted show that the plaintiff could not recover on the
later-pleaded cause of action.  Ortiz v. Collins, 203 S.W.3d 414, 423
(Tex. App.CHouston [14th Dist.] 2006, no pet.).     








While Meineke never explicitly addressed the vicarious DTPA
claim, it thoroughly addressed and negated the scope of employment element of
Zarzana=s vicarious fraud
claim, which was an alternative action based on Shorty=s same underlying
conduct.  Accordingly, we find that by conclusively negating that Shorty=s alleged actions
occurred within the scope of his employment under Zarzana=s vicarious fraud
claim, Meineke negated the same essential element common to his vicarious DTPA
claim.  See Dubose, 117 S.W.3d at 922; see, e.g., Atwood v.
Kansas City Life Ins. Co., No. 14‑96‑00048‑CV, 1997 WL
567941, at *9 (Tex. App.CHouston [14th Dist.] Sept. 11, 1997, no
pet.) (not designated for publication) (affirming summary judgment dismissing
vicarious DTPA violations against insurance company where company conclusively
established that insurance agent acted outside scope of employment); River
Mountain at Breckenridge, Inc. v. Mut. of N.Y. Fin. Serv., No. C14‑94‑00084‑CV,
1994 WL 652766, at *4 (Tex. App.CHouston [14th
Dist.] Nov. 17, 1994, writ denied) (not designated for publication) (affirming
summary judgment dismissing Aall . . . vicarious liability claims@ against financial
corporation, which included DTPA claim based solely on employee=s actions, where
corporation conclusively established that employee had no authority to bind
corporation).  See generally Qantel Bus. Sys., Inc. v. Custom Controls Co.,
761 S.W.2d 302, 305 (Tex. 1988) (recognizing vicarious liability theory of
respondeat superior as valid basis for creating liability under DTPA).  
Therefore, we hold that the trial court properly granted summary judgment in
favor of Meineke on the vicarious DTPA claim.

Meineke similarly failed to explicitly address Zarzana=s later-pleaded
civil conspiracy to defraud claim by not amending its motion for summary
judgment.  However, conspiracy is not an independent cause of action but
requires an underlying tort, which may include fraud.  See, e.g., Ortiz,
203 S.W.3d at 422; Vinson
& Elkins v. Moran, 946 S.W.2d 381, 411B13 (Tex. App.CHouston [14th
Dist.] 1997, writ dism=d by agr.).  If summary judgment is proper
on a fraud claim, summary judgment is proper on a concomitant conspiracy to
defraud claim.  See Ortiz, 203 S.W.3d at 422B23 (holding that
where summary judgment was proper on underlying fraud claim due to lack of
justifiable reliance, summary judgment was also proper on conspiracy to defraud
claim).  In his original petition, Zarzana pleaded only a vicarious theory of
fraud against Meineke based on Shorty=s alleged conduct. 
As stated above, the trial court correctly granted summary judgment on the
vicarious fraud claim.  As such, we hold that Meineke=s motion was
sufficiently broad to encompass the later-pleaded conspiracy claim because it
addressed and negated the only underlying fraud claim that Zarzana pleaded,
which in turn negated the later-pleaded conspiracy to defraud claim.  See
id.  Accordingly, the trial court properly granted summary judgment in
favor of Meineke on civil conspiracy.








We overrule Zarzana=s fourth issue.   


IV.  Conclusion

We affirm the trial court=s grant of summary
judgment on each of Zarzana=s causes of action.  First, we affirm
summary judgment on the negligent supervision claim because Zarzana failed to
raise a fact issue regarding whether the alleged Meineke employee=s actions were
foreseeable to Meineke.  Second, we affirm summary judgment on the vicarious
fraud and DTPA claims because Zarzana failed to raise a fact issue regarding
whether the alleged Meineke employee=s actions fell within
the scope of his employment.  Finally, we affirm summary judgment on Zarzana=s civil conspiracy
to defraud claim because Meineke conclusively negated the underlying tort of
fraud.

We affirm the trial court=s judgment.    

 

 

/s/      Leslie Brock Yates

Justice

 

 

Judgment rendered
and Opinion filed January 23, 2007.

Panel consists of
Chief Justice Hedges and Justices Yates and Seymore.









[1]  The second amended original petition became the live pleading, as it
was filed over seven days before the date set for the summary judgment hearing. 
See Tex. R. Civ. P. 63; Sosa
v. Cent. Power & Light, 909 S.W.2d 893, 895 (Tex. 1995).





[2]  In the second amended original petition, Zarzana
also added a vice principal theory of liability, claiming that Samuel
constituted a vice principal of Meineke, and, as such, all of his conduct
imputed to Meineke.  However, Zarzana does not specifically complain to this
court that Ashley failed to address his vice principal pleading, nor does he
otherwise mention the vice principal pleading on appeal.  Therefore, Zarzana
has waived any error relating to his vice principal pleading.  





[3]  We acknowledge that the intermediate courts appear
to disagree over whether parties may bring negligent supervision causes of
action to recover for damages that do not constitute physical, personal
injuries.  See Garcia v. Allen, 28 S.W.3d 587, 592 (Tex. App.CCorpus Christi 2000, pet. denied) (observing that some
Texas courts have typically applied negligent supervision in situations that
involve physical danger or where alleged negligent supervision caused harm to
third persons rather than co‑workers, but other Texas courts have
declined to do so); see also Verinakis v. Med. Profiles, Inc., 987
S.W.2d 90, 97 (Tex. App.CHouston [14th Dist.] 1998, pet. denied) (holding that
in negligent supervision action, duty of employer extends only to prevent
employee from causing physical harm to third party).  However, we need not
address whether Zarzana properly pleaded negligent supervision because neither
party presented this issue to the trial court or to this court. 





[4]  In issue one, Zarzana contends the court improperly granted no-evidence
summary judgment in favor of Meineke.  In the no-evidence portion of its
motion, Meineke asserted that it was entitled to summary judgment because
Zarzana produced no evidence he had his car inspected at the store or that an
employee sold him an inspection sticker.  It is irrelevant whether Zarzana
created a fact issue over whether such conduct occurred because such fact issue
would not be dispositive of any issues on appeal.  Therefore, we overrule
Zarzana=s first issue.